**In re DYLAN C.**

[Cite as *In re Dylan C.* (1997), 121 Ohio App.3d 115.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–96–152.

Decided June 27, 1997.

*Spiros P. Cocoves,* for appellant.

*Patricia J. Clark,* for appellee.

*Per Curiam.*

This matter is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which granted permanent custody of Dylan C. to the Lucas County Children Services Board ("LCCS"). Appellant Jennifer C., mother of Dylan C., sets forth the following assignment of error:

"Whether the trial court erred in finding Lucas County Children Services should be granted permanent custody of the child."

The following facts are relevant to this appeal. Dylan was born on June 1, 1994. On August 23, 1994, LCCS filed a complaint in dependency and neglect. LCCS alleged that Dylan was in danger due to appellant's repeated presentation of him for unnecessary medical care with symptoms fabricated by appellant.[1] An

---

1. Such behavior has been described in the medical literature as Munchausen syndrome by proxy ("MSBP"). MSBP is a malignant disorder of parenting, a form of child abuse in which

adjudication hearing was held on November 16, 1994 and on November 21, 1994, the referee issued findings of fact adjudicating Dylan a dependent child; temporary custody of Dylan was awarded to LCCS and he was placed in foster care. Case plan services, including parenting classes, psychological evaluations, and psychological counseling, and visitation with Dylan were provided to appellant.

On July 24, 1995, a motion for permanent custody was filed by LCCS. The trial court held a hearing on the motion on several days beginning on March 4, 1996. Appellant was represented by counsel. The alleged father failed to appear. In a judgment entry journalized on April 22, 1996, the trial court awarded permanent custody of Dylan to LCCS, finding, pursuant to R.C. 2151.414(B)(1) and 2151.414(E)(1), (2) and (4), that Dylan could not be placed with either of his parents within a reasonable period of time. On May 10, 1996, appellant filed a timely notice of appeal.

At the permanent custody hearing, the trial court took judicial notice of the adjudicative facts from the prior hearing. At the adjudication hearing, Dylan's former pediatrician testified to the numerous telephone calls and office visits during the first five weeks of Dylan's life. Although appellant had contacted the pediatrician with various medical complaints, the pediatrician found Dylan to be in good health. This doctor eventually asked appellant to find another pediatrician.

Another doctor, a pediatric resident at St. Vincent Medical Center, testified regarding her observations of appellant during Dylan's hospitalization at that institution. Dylan was admitted, based on appellant's claims that Dylan had vomiting and diarrhea for four or five days. Dylan had no vomiting, diarrhea, or seizures during the hospitalization. This doctor also testified regarding appellant's statement that she thought Dylan was autistic. When advised by this doctor that Dylan showed no signs of autism, appellant next stated that he suffered from seizures. After she was told that seizures in newborns were not uncommon, appellant then stated that Dylan was retarded. This doctor also testified that she observed appellant handle Dylan roughly, pounding him on his back and rocking him hard enough to cause concern.

The testimony of a third pediatrician, the chairman of the department of pediatrics at St. Vincent Medical Center, was presented by way of deposition at the adjudication hearing. He testified that neither Dylan's physical examination nor the laboratory findings while he was hospitalized fit the history presented by

---

a parent or caregiver relates fictitious medical histories, induces symptoms or illnesses in the child, and subjects the child to extensive medical evaluations, treatment, or operations. The deception is often repeated on numerous occasions, resulting in many hospitalizations, morbidity, and sometimes death. The mother is nearly always the perpetrator.

appellant on Dylan's admission. This physician stated that the nurses never found anything wrong with Dylan despite appellant's frequent reports that Dylan was not breathing "right" or that there was something "wrong" with Dylan. This physician also confirmed the pediatric resident's testimony about appellant's unsubstantiated beliefs that Dylan was autistic, had seizures, or was retarded. This physician found that Dylan was appropriate for his developmental age, found Dylan's interaction contrary to a diagnosis of autism, and found no reason to suspect that Dylan was mentally retarded. This physician stated that although he and the pediatric resident tried to explain to appellant that none of the particular diagnoses she suggested was reasonable, appellant remained unconvinced. Appellant responded that she needed to see a neurologist about these disorders. This physician also testified that appellant was observed burping Dylan roughly just after feeding him, which would cause Dylan to regurgitate formula. This physician made the diagnosis of MSBP. His testimony was that MSBP has a mortality rate between eight and thirty-one percent and a morbidity rate higher than fifty percent. He also testified that the caregiver becomes more "inventive" in creating diseases that are more serious and devastating for the child and that MSBP tends to progress if intervention is not initiated.

Appellant's independent psychological evaluation was submitted as an exhibit at the adjudication hearing. The trial court had granted appellant's request for an independent psychological evaluation in addition to the psychological evaluation ordered by LCCS. A psychiatric evaluation was also done when Dylan was removed from her custody.[2] All three evaluations indicated that appellant suffers from paranoia, that she demonstrates no responsibility for the removal of her children from her custody, that she shows limited insight into her problems, and that she externalizes blame on others. Both psychological evaluations contained reservations about appellant's potential to mother her children.

At the disposition hearing, a LCCS caseworker, formerly a security officer who supervised visits between appellant and Dylan for approximately ten months, testified. She testified that appellant was restricted in regard to serving food to Dylan and could only serve food provided by the foster parents or food for which the seal had not been broken.[3] Although these rules were reviewed with appellant, this individual observed appellant offer Dylan age-inappropriate food, such as french fries, soft drinks, large sandwiches, and hamburgers. When appellant was reminded of the rules, she would question the rule. Also, appellant

---

2. In addition to Dylan, LCCS also obtained custody of Adam, born August 3, 1989, when he was three years old and Jordan, born October 26, 1995, at birth. Adam and Jordan are in the custody of their respective fathers.

3. These restrictions were imposed, based upon past concerns regarding appellant giving inappropriate food to Dylan and the foster mother's report of Dylan's postvisitation diarrhea.

was frequently observed shaking Dylan, talking loudly to him, and throwing him into the air, even though she had been instructed about more appropriate behavior. Appellant did not modify her behavior with Dylan even though offered suggestions.

The foster mother with whom Dylan had been for approximately twenty months testified. She testified that during this time Dylan had no seizures and that there were no medical concerns. In regard to Dylan's behavior following visitation with appellant, the foster mother testified that he would throw himself on the floor, yell, and not sleep through the night, but wake up once or twice screaming.

The LCCS family caseworker for appellant since 1992 testified in regard to the case plan services for appellant. The caseworker testified that after appellant completed one twelve-week session of parenting classes, it was recommended that she take another session. The caseworker also testified that appellant was referred for psychological treatment to help her gain insight into her parenting behavior and into her medical-attention-seeking behavior. Although appellant attended her psychological appointments, these issues were not resolved. The caseworker also testified about her observations of appellant during visitation with Dylan. The caseworker opined that interaction between appellant and Dylan was limited due to appellant's using the visitation time to discuss issues with the caseworker, even though the caseworker was available to meet with appellant on other occasions. The caseworker did not believe that appellant could visit Dylan without supervision, that although numerous services had been provided to appellant, she had not changed in her parenting or interaction with Dylan, that an award of permanent custody to LCCS was in the best interests of the child, and that the probability of adoption was high.

The clinical psychologist whose report was submitted at the adjudication hearing also testified at the disposition hearing. Since December 19, 1994, this psychologist had seen appellant for fifteen counseling sessions in an effort to address why Dylan had been removed. The psychologist's testimony confirmed her written report. She stated that appellant suffers from paranoia and that she meets some criteria for several different personality disorders, that these psychological features would interfere with her ability to parent effectively, that appellant developed no insight as to any of the difficulties she was having with either Dylan or LCCS, and that although appellant learned information, she could not transfer it to day-to-day experience. The psychologist also testified that because there had been no significant change in appellant's behavior, Dylan would be at risk if returned to appellant. The psychologist admitted that her testimony was based upon her observations of appellant.

A social worker who had worked with appellant in parenting classes also testified. This individual described the following concerns: that appellant exhibited attention-seeking behavior while in class, that appellant had difficulty focusing on Dylan, that appellant rocked Dylan very fast and talked very loudly to him even though instructed otherwise, that appellant had difficulty understanding developmentally appropriate play, and that appellant had difficulty transferring theoretical information into interaction. This social worker would not recommend that appellant have custody of Dylan.

Appellant presented testimony of a neighbor who had contact with appellant soon after Dylan was born. This witness testified that she had no concerns about her three-year-old daughter being with appellant and thought appellant took good care of Dylan. This witness admitted that she was not aware that appellant had frequent contact with doctors regarding Dylan and that appellant had taken Dylan to emergency rooms for care.

Appellant also presented the testimony of the fiancee of the father of Adam, her first child. This witness has known appellant for approximately a year and a half. This witness observed appellant during her court-ordered supervised visitation with that child, who is now six years old. Visitation usually occurred once a week for two hours. This witness described appropriate interactions with Adam and stated that she had no concerns about Adam or her son being with appellant.

Appellant testified on her own behalf. She denied feeding Dylan age-inappropriate food. She did not agree with the testimony of the security guard who supervised her visitation with Dylan in regard to throwing Dylan in the air; appellant stated that she only held Dylan in the air. Appellant did not agree with the testimony of the caseworker in regard to not showing improvement and continuing to display attention-seeking behavior. Appellant testified that she is focused on Dylan. She described her relationship with Dylan as wonderful and stated that she can parent Dylan and provide for his needs, and that he would not be at risk.

Another friend of appellant's testified. This friend had observed appellant with Dylan on one occasion. This friend testified that she had no concerns about her two children being with appellant or going with appellant to her home.

The guardian *ad litem* filed a written report and was questioned by the court and appellant's attorney. This individual was also the guardian *ad litem* for appellant's two other children, Adam and Jordan, and had been involved with appellant since 1992. Even though the guardian *ad litem* acknowledged that appellant had changed a little bit since 1992, the guardian *ad litem* recommended that LCCS be granted permanent custody of Dylan so that he could be placed for adoption. The guardian *ad litem* also testified that appellant loves Dylan and has

tried her hardest. The guardian *ad litem* stated that although appellant understands information, she cannot put it into practice enough to care for her children on a full-time basis.

R.C. 2151.414(E) requires the trial court to find that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with the parents once the court has determined by clear and convincing evidence that one or more of the eight factors exist. Once the trial court finds from all relevant evidence that one of the eight factors exists, it then must consider whether permanent custody is in the best interest of the child. R.C. 2151.414(B). Only then may it grant permanent custody of the child to the agency.

On appeal, this court must determine whether the lower court complied with the statutory requirements of R.C. 2151.353 and 2151.414 and whether there was sufficient evidence to support a finding by clear and convincing evidence that one or more of the factors listed in R.C. 2151.414(E) exist. Permanent custody may not be granted unless the trial court finds clear and convincing evidence that one or more of the eight enumerated factors in R.C. 2151.414(E) exist. *In re William S.* (1996), 75 Ohio St.3d 95, 101, 661 N.E.2d 738, 742–743. Clear and convincing evidence is that level of proof which would cause the trier of fact to develop a firm belief or conviction as to the facts sought to be proven. *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus. The trial court must consider the best interests of the child by examining the factors listed in R.C. 2151.414(D)(1) through (5).[4] An appellate court will not reverse a trial court's determination concerning parental rights and child custody unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof. *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, 18 OBR 419, 425–426, 481 N.E.2d 613, 620–621, and *In re Ball* (1982), 5 Ohio App.3d 56, 58, 5 OBR 152, 154–155, 449 N.E.2d 490, 493–494.

---

**4.** The factors, as applicable to this case, were:

"(1) The reasonable probability of the child being adopted, whether adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption.

"(2) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;

"(3) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

"(4) The custodial history of the child;

"(5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."

██ In her assignment of error, appellant argues that the evidence presented at the hearing was insufficient to support the award of permanent custody. This court set forth above the standard of review in a case involving termination of parental rights. Upon consideration of the law and of the entire record of the proceedings in the trial court, this court finds that there was clear and convincing evidence presented at the hearing to support the trial court's findings. Accordingly, the evidence clearly supports the award of permanent custody that was entered by the trial court, and appellant's assignment of error is found not well taken.

The decision of the Lucas County Court of Common Pleas, Juvenile Division is affirmed. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, SHERCK and KNEPPER, JJ., concur.