OPINION
Appellant Robin Hawkins appeals from a judgment of the Miami County Common Pleas Court, Juvenile Division, awarding permanent custody of her children to the Miami County Children's Services Board (MCCSB). She contends that the judgment is not supported by the evidence, and that the trial court erred by admitting privileged information regarding her counseling sessions with a psychologist.
We conclude that the trial court did err by admitting testimony from Hawkins's psychologist; however, the error was harmless. We further conclude that the decision to divest Hawkins of custody of her children is not supported by clear and convincing evidence.
Accordingly, the judgment of the trial court is Reversed and Vacated.
 I
Robin Hawkins is the natural mother of Jonathan Bowman, Amber Bowman and Samantha Frees.[1] In February, 1997, Hawkins was jailed for a probation violation. Jerry Bowman, the children's father, placed the children with relatives.[2] The relatives contacted MCCSB because they were unable to keep the children. MCCSB could not locate Jerry Bowman, and, therefore, filed a complaint for custody on March 17, 1997. On April 14, 1997, an ex parte order was entered granting custody to MCCSB. Thereafter, an agreed order of adjudication and disposition was entered wherein Hawkins agreed to grant temporary custody of the children to MCCSB.
A case plan was entered, which required Hawkins to do the following: (1) complete probation; (2) maintain employment; (3) complete parenting classes; (4) complete counseling; (5) remain drug and alcohol free; and (6) maintain appropriate housing. On January 26, 1998, Hawkins filed a motion to regain custody because she had substantially complied with the case plan. MCCSB filed a motion to restore custody, with an order of protective supervision. On March 23, 1998, the trial court restored custody of Amber and Samantha to Hawkins, with an order of protective supervision. However, it granted an extension of temporary custody of Jonathan to MCCSB.
In February, 1999, Hawkins was arrested after she was cited for Driving Under the Influence, Leaving the Scene and Failure to Maintain Assured Clear Distance. Hawkins's probation was revoked, and she was incarcerated.[3] In March, 1999, MCCSB filed a motion seeking permanent custody of the children.
A hearing was held before a magistrate on May 12 and 13 and June 2, 1999. The magistrate issued a decision, on July 19, 1999, granting permanent custody of all three children to MCCSB. Hawkins filed objections. The trial court overruled the objections and upheld the magistrate's decision.
From the judgment of the trial court, Hawkins appeals.
 II
Hawkins's First Assignment of Error provides:
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED PERMANENT CUSTODY TO THE MIAMI COUNTY CHILDREN'S SERVICES BOARD WITHOUT CLEAR AND CONVINCING EVIDENCE.
Hawkins contends that the judgment of the trial court is not supported by clear and convincing evidence in the record.
"The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." Miller v. Miller (1988), 37 Ohio St.3d 71, 74. "While the trial court's discretion in a custody proceeding is broad, it is not absolute, and must be guided by the language of the relevant statute." In re Beal (Oct. 5, 1992), Clark App. No. 2903, unreported.
Pursuant to R.C. 2151.414(B)(1)(a), the trial court may grant permanent custody of a child who has not been abandoned or orphaned to a public children services agency if the trial court determines, by clear and convincing evidence, that: (1) it is in the child's best interests to do so; and (2) the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents. R.C.2151.414(E) sets forth a list of circumstances which would allow the trial court to find that the child cannot be placed with his parents within a reasonable time or should not be placed with his parents. Specifically, R.C. 2151.414(E) states, in pertinent part:
 If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
"Clear and convincing evidence is that level of proof which would cause the trier of fact to develop a firm belief or conviction as to the facts sought to be proven." In re Dylan C. (1997), 121 Ohio App.3d 115,121, citation omitted. "An appellate court will not reverse a trial court's determination concerning parental rights and child custody unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof." Id., citation omitted.
In In re Lawson/Reid (April 18, 1997), Clark App. No. 96-CA-0010, unreported, this court held that an adjudication under R.C. 2151.414
awarding permanent custody to a children's services agency requires that the trial court make a written finding, pursuant to R.C. 2151.419(B), that the agency has made reasonable efforts to prevent the removal of the child from his home, to eliminate the continued removal of the child from his home, or to make it possible for the child to return home. In its decision, the trial court determined that MCCSB had made efforts to prevent the permanent removal of the children from their home and to facilitate the reunification of Hawkins and the children. Based upon our review of the record, we conclude that this finding is not supported by clear and convincing evidence.
The trial court and MCCSB placed great emphasis upon the fact that MCCSB had made efforts to provide Hawkins with counseling in order to help her address her parenting skills as well as her personal problems (specifically any problems related to alcohol use and her continued physical abuse at the hands of the children's father). Hawkins's failure to attend counseling also played a major role in the trial court's decision to grant permanent custody to MCCSB.
From our review of the record, it appears that Hawkins attempted to comply with the counseling requirement. However, as the trial court noted, she was "quite guarded and angry," and did not complete any counseling program. From our review of the record, we conclude that Hawkins's anger resulted, at least in part, from the fact that she was required to sign waivers permitting all of the therapists she saw to release her files to MCCSB. Understandably, Hawkins was not willing to undergo therapy with such a stipulation.[4]
As we have previously stated:
 * * * the purpose of the [physician-patient] privilege statutes is to "create an atmosphere of confidentiality, encouraging the patient to be completely candid and open with his or her physician, thereby enabling more complete treatment." Furthermore, the purpose of reunification case-plans is to reunify the parent and child by remedying the reason for the removal of the child from the home. In order to meet the goal of the reunification plan, the purpose underlying the statutory privilege — effective treatment — is material and significant. In other words, if a parent is fearful that any communications with her provider will not be privileged, she may not be open and truthful during treatment, thereby undermining the effectiveness of treatment and ultimately defeating the goal of remedying the reason for the removal of the child.
 In re Wieland (July 9, 1999), Montgomery App. No. 17646, unreported, citations omitted.
We conclude that although MCCSB required Hawkins to undergo counseling, and even provided access to therapists, its requirement that Hawkins sign waivers hindered, rather than facilitated, her effort to comply with the case plan.
We recognize that Hawkins has exhibited some questionable conduct during the extended period of time that MCCSB has been involved with her family. We do not intend to condone her behavior insofar as it might have a negative effect on her children. However, it must be recalled that this is a case in which the State is attempting to take a citizen's children away from her, permanently divesting her of her parental rights. While the State has the undoubted power to do so in appropriate cases, the extinction of the natural rights of a parent must not be lightly considered. Since the record shows that Hawkins attempted to comply with the case plan by attending counseling, and that a majority of the problems cited by MCCSB might be remedied if appropriate counseling is provided [a fact that even MCCSB appears to acknowledge], in this case, we cannot say that MCCSB made reasonable efforts to provide effective counseling, because Hawkins was not given the opportunity to attend sessions without the fear of having everything she revealed in therapy used against her in determining whether to remove her children from her care.
We conclude that the trial court's finding that MCCSB made reasonable efforts to facilitate reunification is not supported by clear and convincing evidence in the record. Accordingly, the First Assignment of Error is sustained.
 III
The Second Assignment of Error states as follows:
 THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY OF DR. GORRELL IN VIOLATION OF THE NATURAL MOTHER'S PHYSICIAN-PATIENT PRIVILEGE.
Hawkins contends that the trial court erred by permitting MCCSB to admit the deposition testimony of Dr. David Gorrell, a therapist with Shelby County Counseling Center whom she met with on three occasions. She contends that since he had acted as her treating psychologist, Dr. Gorrell's testimony was subject to the physician-patient privilege and was inadmissible.
MCCSB argues that Hawkins has waived this argument on appeal by failing to properly object to it at the trial court level. MCCSB further argues that the treatment provided by Dr. Gorrell was aimed at trying to remedy the problems that caused the children to be removed from the home, and that any issues raised in the counseling sessions would merely be used by the "treatment team" in an effort "to correct the living environment to enable [Robin] parent to regain custody." Therefore, it claims that no privilege attaches.
This court has unequivocally held that when a parent undergoes counseling for the purpose of treatment, even if the treatment is involuntary and court-ordered, the physician-patient privilege is applicable. In re Wieland (July 9, 1999), Montgomery App. No. 17646. In this case, there is no dispute that Dr. Gorrell was consulted for the purposes of treatment. Therefore, we find that the trial court erred by admitting his testimony.
However, we have reviewed the contents of the deposition and conclude that, in the particular circumstances of this case, the error was harmless. Gorrell, who did not provide his file notes at the deposition, did not provide any medical or social history regarding Robin. Furthermore, he did not provide any diagnosis or prognosis. He merely stated that he had met with Robin on three occasions, that she had failed to attend any other sessions, and that he had closed his file on her. He further testified that Robin had been, and possibly still was, involved in abusive relationships — a fact already known to the trial court.
Therefore, we conclude that to the extent that Dr. Gorrell revealed any privileged information, it did not prejudice Robin because it was already known to the trial court. We need not address the issue whether Robin properly preserved this issue for appeal.
Hawkins's Second Assignment of Error is overruled.
 IV
Hawkins's First Assignment of Error having been sustained, the judgment of the trial court is Reversed and Vacated.
 ______________________ FAIN, J.
GRADY, P.J., and YOUNG, J., concur.
[1] Jonathan's date of birth is July 16, 1993; Amber's is September 14, 1994; and Samantha's is July 26, 1995.
[2] The father, Jerry Bowman, is not a party to this appeal.
[3] As the trial court noted in its decision granting permanent custody to MCCSB, Hawkins's scheduled release date was July 18, 1999, at which time she would "have served all outstanding time and no longer be on probation."
[4] MCCSB notes that Hawkins was permitted to go to a therapist of her own choice, but that she quit seeing that therapist after three sessions. As noted in the discussion of the Second Assignment of Error, that therapist was required to testify in this matter regarding his sessions with Hawkins.