OPINION
Robert Lane is appealing a judgment of the Montgomery County Common Pleas Court, Juvenile Division, placing all four of his children in a planned permanent living arrangement with Montgomery County Children's Services Bureau ("CSB") pursuant to R.C. 2131.353(A).
Robert Lane, Jr. (born June 12, 1986), Melissa Lane (born October 8, 1987), Jessica Lane (September 14, 1989), and Rachel Lane (born December 19, 1991), were adjudicated dependent on November 12, 1993 and placed in the temporary custody of CSB. The children had been in the custody of their mother, Deborah Lane, prior to their removal. Robert obtained legal custody of the children on October 18, 1994.
On September 17, 1996, Robert Lane, Jr. was adjudicated neglected as a result of being struck by Robert several times in the face, and because Robert failed to give him his medicine. At that time, Robert remained the legal custodian of the children, but CSB was granted protective supervision over the family.
On November 10, 1997, CSB obtained temporary custody of all four children when Robert was incarcerated after allegations arose that he had sexually abused Rachel. These allegations were never substantiated by CSB nor by law enforcement authorities. On December 2, 1997, CSB filed a motion requesting that all four children be placed into the permanent custody of CSB. The guardian ad litem did not recommend permanent custody, but instead recommended that CSB be given an extension of temporary custody. The trial court followed the guardian ad litem's
recommendations and twice extended CSB's temporary custody.
On August 31, 1998, CSB filed another motion for permanent custody of the four children. Again, the guardian ad litem recommended against permanent custody, suggesting that the children be placed in the legal custody of Robert, with protective supervision being granted to CSB. On June 30, 1999, CSB filed a motion to modify Robert's visitation with Robert, Jr. after Robert, Jr.'s therapist expressed concerns that his behavior was declining because of the possibility of reunification and his fear of being physically abused by Robert. The trial court granted the motion.
In November of 1999, the guardian ad litem filed a supplemental report stating that Melissa and Robert, Jr. had accused Robert of sexual abuse. The guardian ad litem felt that Melissa had confided in him as a result of the possibility of reunification. Robert, Jr. expressed reservations to the guardian ad litem about living with his father. As a result, the guardian ad litem recommended that CSB's motion for permanent custody be granted.
Following a trial on the matter, the magistrate filed his decision on February 17, 2000, denying the motion for permanent custody of the children, but finding that it would be in the children's best interest for them to be placed into a planned permanent living arrangement with CSB. Robert filed objections, but the trial court affirmed the decision of the magistrate on August 4, 2000.
Robert now appeals, asserting one assignment of error.
 I. The juvenile court erred by ordering a permanent planned {sic} living arrangement for all four Lane children absent a finding by clear and convincing evidence of the factors enumerated in Revised Code § 2151.353(A)(5).
 In his assignment of error, Robert argues that there was not clear and convincing evidence in the record to support the trial court's decision to place the children in a planned permanent living arrangement.
A trial court's decision concerning child custody matters rests within its sound discretion. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. See, also, In re Beal (Oct. 5, 1992), Clark App. No. 2903, unreported. Nevertheless, "[w]hile the trial court's discretion in a custody proceeding is broad, it is not absolute, and must be guided by the language of the relevant statute." In re Beal, supra. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Pursuant to R.C. 2151.353(A)(5), a child may be placed in a planned permanent living arrangement if the trial court finds, by clear and convincing evidence, that it is in the best interest of the child and:
 (a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.
 (b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 [2151.41.4] of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
 (c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living.
"Clear and convincing evidence is that level of proof which would cause the trier of fact to develop a firm belief or conviction as to the facts sought to be proven." In re Dylan C. (1997), 121 Ohio App.3d 115, 121. (Citation omitted.) "An appellate court will not reverse a trial court's determination concerning parental rights and child custody unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof." Id. (Citation omitted.)
Preliminarily, we note that Robert's trial counsel motioned the court to consider a planned permanent living arrangement as an alternative to permanent custody. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." State ex rel. Bitter v. Missig
(1995), 72 Ohio St.3d 249, 254, citing State ex rel. Fowler v. Smith
(1994), 68 Ohio St.3d 357, 359. See, also, In re Lee (Nov. 12, 1996), Athens App. Nos. 96CA1749, 96CA1756, unreported. Because Robert requested that the trial court consider a planned permanent living arrangement as an alternative to permanent custody, Robert should not be able to claim on appeal that the trial court erred by granting his request. However, as Robert did raise this issue in his objections to the magistrate's decision, we will address his argument on appeal.
Robert first contends that it was an abuse of discretion to place the children in a planned permanent living arrangement under R.C. 2151.353(A), because CSB had not requested such placement. In this regard, we have held that a court, in its discretion, may consider the option of a planned permanent living arrangement even when, as here, the agency does not request it. In the Matter of Buchanan (July 25, 1997), Clark App. Nos. 96-CA-0062, 96-CA-0063, unreported. See, also, In the Matter ofBeal, supra; In the Matter of Cremeans (Mar. 12, 1992), Cuyahoga App. No. 61367, unreported.
Furthermore, Robert asserts that the remaining statutory requirements under R.C. 2151.353(A) were not met. According to Robert, there was evidence that the children had psychological issues, but there was no evidence that the children would be unable to function in a family-like setting with Robert as their legal guardian. Additionally, Robert asserts that none of the children were undergoing residential care, he was not physically, mentally or psychologically unable to care for his children, and none of the children were over the age of sixteen.
Nonetheless, the magistrate found, by clear and convincing evidence, that a planned permanent living arrangement with CSB would be in the best interest of the children because, under R.C. 2151.353(A)(5)(a), the children had "significant psychological, mental problems, and needs" and, under R.C. 2151.353(A)(5)(b), Robert had maintained a "significant relationship" with his children. The trial court affirmed the magistrate's decision, finding clear and convincing evidence under the statutory factors that it would be in the children's best interest to be placed into a planned permanent living arrangement. The trial court stated:
 The children do retain a significant and positive relationship with the father. O.R.C. § 2151.353(A)(5)(b). Although the Court recognizes that the children are not currently placed in residential or institutional care, and that Mr. Lane does not suffer from significant physical, mental, or psychological problems, the Court believes that the special needs of the children, such as for Robert Jr. and Rachel, who are both diagnosed with disorders and are currently taking medication, and for Melissa, who has had some behavioral problems as well as sexual acting out problems, would be adequately addressed in the planned permanent living arrangement, rather than in a residential setting. (Tr. 25-29, Vol. I)
 * * * [T]he record reflects that the children's needs would not be met in an immediate residential setting, that therapy needs to be continued, and that the father at this point is not capable of providing for the children's needs.
(Doc. No. 115, p. 3.)
We find no abuse of discretion, as the trial court's decision is supported by clear and convincing evidence in the record. Robert, who regularly visited with the children and attended the family counseling sessions, maintained a significant relationship with the children and was bonded to them. There is, however, ample evidence in the record that the children have special needs. Rachel was diagnosed with attention deficit hyperactivity disorder (ADHD) and was on Ritalin. She also was involved in occupational therapy for a sensory motor disorder. Robert, Jr. was also on medication because he suffered from ADHD, an anxiety disorder, a possible conduct disorder, and he had been exhibiting other behavioral problems. Melissa was sexually acting out and had been exhibiting other behavioral problems such as stealing. While we agree that Jessica did not suffer from any disorder nor did she have any serious behavioral problems, we do not find that the trial court abused its discretion in refusing to place her into Robert's legal custody. Jessica and Rachel were placed in the same foster home from the time that Children's Services became involved in the case, and there was evidence that she could develop behavioral problems if she was removed from the foster home without Rachel. Moreover, in making its decision, the trial court properly considered the past failed attempts at reunification, including the placement of the children with Robert in 1996, in which they were again removed due to Robert's incarceration for child abuse charges.
Contrary to Robert's assertions, we do not find the trial court's conclusions to be in contravention to either the wording or the intent of R.C. 2151.353(A)(5). We further find that the trial court's findings were supported by clear and convincing evidence in the record. Because of the bond between Robert and his children, but also because of the special needs of the children and the unique facts in this case, the trial court correctly realized that there was a potential for continuing this beneficial relationship between Robert and his four children and the possibility of reunification sometime in the future, but not at the time of trial. Under these facts, it was not an abuse of discretion for the trial court to express serious concerns regarding Robert's ability to care for any of the children's needs, including Jessica's, at the time of trial, and to find that it would be in the children's best interest to be placed in a planned permanent living arrangement.
Accordingly, we overrule Robert's assignment of error.
Judgment of the trial court is affirmed.
 ________________________ FREDERICK N. YOUNG, J.
WOLFF, P.J. and BROGAN, J., concur.