OPINION.
{¶ 1} Marissa Dover appeals from a decision and entry of the Clark County Common Pleas Court, Domestic Relations Division, Juvenile Section, terminating her parental rights and awarding permanent custody of three of her four minor children to the Clark County Department of Job and Family Services ("CCDJFS").[1]
 {¶ 2} Ms. Dover advances two assignments of error on appeal. First, she contends the trial court erred in awarding permanent custody to CCDJFS when proper statutory procedures were not followed. In particular, she asserts that the trial court lacked authority to award CCDJFS permanent custody because the agency's temporary custody of her children had lapsed when it moved to terminate her parental rights. Second, she argues that the trial court's decision to award permanent custody to CCDJFS was against the manifest weight of the evidence.
 {¶ 3} Upon review, we conclude that any temporary custody awarded to CCDJFS had not lapsed when it sought to terminate Ms. Dover's parental rights and to obtain permanent custody. We also find that the trial court's decision to award CCDJFS permanent custody of her children was supported by the manifest weight of the evidence. Accordingly, the trial court's judgment will be affirmed.
 I. {¶ 4} The record reflects that in January, 2001, CCDJFS filed separate complaints for emergency shelter care, alleging that Ny'Esha Robinson and Marques Robinson were dependent. In response, the trial court placed the children in temporary shelter care and appointed a guardian ad litem. Following an evidentiary hearing, the trial court adjudicated Ny'Esha and Marques dependent and awarded CCDJFS temporary custody on April 18, 2001.
 {¶ 5} In July, 2001, CCDJFS filed a complaint and motion to modify its temporary custody of Ny'Esha and Marques to permanent custody. On July 25, 2001, the trial court continued its prior award of temporary custody, pending a hearing on CCDJFS's filing. Thereafter, Ms. Dover gave birth to Xiaou Yin Dover. On September 25, 2001, CCDJFS filed a complaint for emergency shelter care of Xiaou Yin, alleging that the child was dependent. In response, the trial court placed Xiaou Yin in temporary shelter care and later appointed a guardian ad litem. On October 3, 2001, CCDJFS filed a complaint and motion to modify its temporary shelter care to permanent custody of Xiaou Yin. The following day, the trial court filed an entry continuing temporary shelter care, pending a hearing on CCDJFS's motion.
 {¶ 6} Following several delays and other filings, the trial court in February and March, 2002, held a four-day hearing on CCDJFS's requests for permanent custody of Ny'Esha, Marques, and Xiaou Yin. On March 28, 2002, the trial court filed a judgment entry in which it found that CCDJFS had failed to prove its entitlement to permanent custody of the children by the requisite clear and convincing evidence. As a result, the trial court ordered "the temporary custody order of [CCDJFS] continued for 30 days." The trial court further ordered that CCDJFS's temporary custody would terminate after 30 days, with the agency having protective supervision for six months thereafter.
 {¶ 7} During the 30-day window that CCDJFS's temporary custody remained in effect, the agency filed a motion for reconsideration on the basis of certain new evidence. In response, the trial court filed an order continuing its prior temporary custody order. Ms. Dover then moved to dismiss CCDJFS's motion for reconsideration on the basis that "[t]here is no such motion under the Ohio Revised Code." While the motion for reconsideration and motion to dismiss were pending, CCDJFS filed a new complaint and motion to modify temporary custody of Ny'Esha, Marques, and Xiaou Yin to permanent custody on the basis of its new evidence. In response, the trial court again filed an order continuing temporary custody, pending resolution of the complaint and motion for permanent custody. The trial court then held another evidentiary hearing on August 22-23, 2002. Following that hearing, the trial court filed a September 23, 2002, decision and entry in which it declared the three children to be dependent, terminated parental rights, and ordered the children placed in the permanent custody of CCDJFS. Ms. Dover timely appealed, advancing two assignments of error.
 II. {¶ 8} In her first assignment of error, Ms. Dover states:
 {¶ 9} "The trial court erred in awarding permanent custody of appellant-mother's minor child to the Clark County Department of Jobs and Family Services because the state did not follow the statutorily required procedural steps in violation of appellant's constitutional right to due process under the Fourteenth Amendment of the United States Constitution and Article I, Section 10, of the Ohio State Constitution."
 {¶ 10} Ms. Dover argues that CCDJFS retained temporary custody of Ny'Esha, Marques, and Xiaou Yin only until April 27, 2002, which is 30 days after the trial court's March 28, 2002, entry denying permanent custody. According to Ms. Dover, on April 27, 2002, legal custody of the children reverted to her, and CCDJFS only had protective supervision as of that date. Ms. Dover next asserts that under R.C. § 2151.413(A), CCDJFS was required to have temporary custody when it filed its motion requesting permanent custody. Based on her belief that CCDJFS lacked temporary custody when it filed its second complaint and motion to modify temporary custody to permanent custody, Ms. Dover argues that the trial court erred in sustaining the motion and terminating her parental rights.
 {¶ 11} Upon review, we find that Ms. Dover's argument lacks merit. Assuming, arguendo, that Ohio law required CCDJFS to have temporary custody of the children when it filed its second complaint and motion for permanent custody, Ms. Dover has not demonstrated any error in the trial court's ruling. As noted above, the trial court filed a March 28, 2002, judgment entry in which it declined to award CCDJFS permanent custody. In that ruling, the trial court ordered "the temporary custody order of [CCDJFS] continued for 30 days," or through April 27, 2002, with regard to each of the three children. During the 30-day window, CCDJFS moved for reconsideration. On April 25, 2002, which was still within the 30-day window, the trial court filed an order continuing temporary custody of the three children during the pendency of CCDJFS's motion for reconsideration. Thus, the trial court's prior order of temporary custody did not lapse on April 27, 2002, as Ms. Dover asserts. Furthermore, while the motion for reconsideration and motion to dismiss were pending,[2]
CCDJFS filed its renewed complaint and motion to modify temporary custody of Ny'Esha, Marques, and Xiaou Yin to permanent custody. In connection with this motion, the trial court again continued temporary custody pending disposition of the motion. The trial court did not resolve the motion until September 23, 2002, when it declared the three children to be dependent, terminated parental rights, and ordered the children placed in the permanent custody of CCDJFS.
 {¶ 12} In light of the foregoing facts, the record does not support Ms. Dover's argument that legal custody reverted to her on April 27, 2002. On appeal, she fails to address the trial court's entry that continued temporary custody pending resolution of CCDJFS's motion for reconsideration.[3] Although Ms. Dover does not do so, one could argue that this extension of temporary custody was of no effect, insofar as it purported to continue temporary custody pending resolution of a motion for reconsideration, which is regarded as a nullity when filed after final judgment in a trial court. See, e.g., Pitts v. Ohio Dept. of Trans. (1981), 67 Ohio St.2d 378. In other words, one could argue that an order continuing temporary custody pending resolution of a nullity is itself a nullity. In the present case, however, we would find such an argument unpersuasive even if Ms. Dover had made it.
 {¶ 13} A review of CCDJFS's motion reveals that it was not a true motion for reconsideration, despite the fact that the agency styled it as one. In Hatton v. Hatton (July 14, 1987), Montgomery App. No. 10309, we recognized that the name given to a motion is not controlling. Rather, it is the substance, and not the caption, that determines a motion's operative effect. Id. A motion for reconsideration is used "to raise an obvious error in the court's original decision or to raise an issue that the court inadvertently failed to consider at all or failed to completely consider." In re Richardson, Mahoning App. No. 01 CA 78, 2002-Ohio-6709. The motion filed by CCDJFS did not purport to raise any error in the trial court's March 28, 2002, ruling. Nor did it purport to raise an issue that the trial court neglected to consider in that ruling. Rather, the motion filed by CCDJFS merely alleged that new facts and evidence, which came to light after the trial court's ruling, supported an award of permanent custody. In substance then, if not in form, the motion did not seek reconsideration of any erroneous ruling, but instead constituted a renewed motion for modification of child custody.[4] Cf. Huxley v.Huxley (May 23, 1984), Wayne App. No. 1903 (finding that a motion for reconsideration in a child custody case was not a nullity because the motion, in effect, invoked the trial court's continuing jurisdiction over custody matters). Standing alone and without evidentiary support, the motion may not have entitled CCDJFS to an award of permanent custody, but it was not a nullity. Indeed, the Ohio Revised Code specifically authorized CCDJFS to file a motion at any time, asking the trial court to modify a prior order of disposition. See, e.g., R.C. § 2151.353(E)(2). Given that CCDJFS's mis-styled motion for reconsideration was not a nullity, insofar as it actually sought relief that the trial court was authorized to grant, the trial court's entry that continued temporary custody pending its resolution likewise was not a nullity. As noted, supra, the motion for reconsideration remained pending when CCDJFS filed its renewed complaint and motion for permanent custody. Upon the filing of that permanent custody motion, the trial court again continued temporary custody until the permanent custody issue could be resolved. Consequently, CCDJFS retained temporary custody until the trial court filed its September 23, 2002, decision and entry granting the agency permanent custody and terminating parental rights. As a result, the record fails to support Ms. Dover's first assignment of error.
 III. {¶ 14} Ms. Dover's second assignment of error is as follows:
 {¶ 15} "The trial court erred in ordering permanent custody to Children Services Board as such was against the manifest weight of the evidence."
 {¶ 16} Ms. Dover alleges that the trial court's decision to award permanent custody to CCDJFS was against the manifest weight of the evidence. In support, she asserts that CCDJFS presented essentially the same evidence at the second permanent custody hearing that it had presented at the first hearing. Given that the trial court overruled the first motion for permanent custody, Ms. Dover reasons, with minimal argument, that the trial court's decision to sustain the second permanent custody motion was against the manifest weight of the evidence.
 {¶ 17} Upon review, we find Ms. Dover's argument to be unpersuasive. In its September 23, 2002, decision and entry, the trial court noted the existence of a stipulation that it could consider evidence presented at the first permanent custody hearing. The trial court also found that CCDJFS had presented "additional and different" evidence to support its second permanent custody motion. Based on all of the evidence before it, the trial court then found "no likelihood that the children can be safely returned to the parents now[,] * * * at any time in the near future" or "any time soon." In addition, the trial court concluded that granting permanent custody to CCDJFS would be in the best interest of the children for several reasons. Having reviewed both the trial court's ruling and the evidence in this case, we conclude that the decision to award CCDJFS permanent custody was not against the manifest weight of the evidence.
 {¶ 18} In order to award permanent custody to a children services agency under R.C. § 2151.414(B)(1), a trial court must determine, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency and that:
 {¶ 19} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 20} "* * *
 {¶ 21} "(d) The child has been in the temporary custody of one or more public children services agencies or private children services agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 22} "Clear and convincing evidence is that level of proof which would cause the trier of fact to develop a firm belief or conviction as to the facts sought to be proven." In re Dylan C (1997),121 Ohio App.3d 115, 121 (citation omitted). "An appellate court will not reverse a trial court's determination concerning parental rights and child custody unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof." Id. (citation omitted). "When a judgment is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact `clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" In re Conner, Montgomery App. No. 18808,2001-Ohio-1693 (citation omitted). "A judgment should be reversed as being against the manifest weight of the evidence `only in the exceptional case in which the evidence weighs heavily against the [judgment].'" Id. (citation omitted).
 {¶ 23} In the present case, the record reflects that Ny'Esha and Marques had been in the temporary custody of CCDJFS for twelve or more months of a consecutive twenty-two month period, as required by R.C. § 2151.414(B)(1)(d). It appears that Xiaou Yin had not been in the temporary custody of CCDJFS for twelve or more months of a consecutive twenty-two month period. However, the trial court made findings sufficient to establish under R.C. § 2151.414(B)(1)(a) that he could not be placed with either parent within a reasonable time or that he should not be placed with either parent. Such a conclusion is warranted when a court determines that a parent has demonstrated a lack of commitment as evidenced by any "actions showing an unwillingness to provide an adequate permanent home for the child." R.C. §2151.414(E)(4). In its September 23, 2002, decision and entry, the trial court determined that despite her ability to work, Ms. Dover had failed to maintain employment to provide for her children. Ms. Dover has not disputed this finding, which alone demonstrates her lack of commitment and unwillingness to provide an adequate permanent home for her children.
 {¶ 24} With regard to the best interest of the children, the trial court made a number of pertinent findings concerning Ny'Esha, Marques, Xiaou Yin, and Ms. Dover's ability to care for them.[5] In particular, the trial court stated:
 {¶ 25} "* * * Contrary to the case plan requirements, the mother has failed to complete her recommended counseling, failed to obtain safe and stable housing, failed to obtain employment, failed to address the concerns of the prior abuse of her daughter, failed to maintain a safe and stable relationship and has not consistently followed through with the recommendations of the parenting instructors and her counselors. The mother has evidenced trouble with self-control and a failure to comply with reasonable directives from those in a position to direct or assist her.
 {¶ 26} "The mother has regularly attended visitation, but the evidence shows that frequently she was more interested in her concerns and adult conversation than in the needs of the children. She has failed to maintain a stable relationship with the father, failed to maintain stable housing that she was entitled to live in, failed to obtain employment when able to work and failed to benefit from counseling services. Mother evidences a love and concern for her children, but love is not enough.
 {¶ 27} "* * *
 {¶ 28} "The children are appropriately growing, maturing and developing in foster care. Ny'Esha has been in her foster home for 19 months and is well adjusted and part of that family. She is happy, content and doing well. She attends visitation but frequently balks at that process and contact with parents. Xiaou Yin has been in the same foster home almost since birth. She resists visitation with mother physically and emotionally. Visitation seems to benefit mother much more than Xiaou Yin. As Xiaou Yin gets older she is evidencing bonding and affection with foster parents as would be expected. She is developing appropriately and is doing well in her foster home. Marques is also healthy and reasonably normal and progressing in foster care. He evidences a strong will but is a healthy, normal boy. None of the children benefit from contact with their father or mother.
 {¶ 29} "* * *
 {¶ 30} "The Department of Job and Family Services has made reasonable efforts to reunite the children and parents. It established a case plan which sought the best interest of the children. It attempted to maintain regular communication, establish visitation, attempted home visits and facilitated completion of the case plan, all of which have proven unsuccessful due to the unwillingness and inability of the parents to care for their [children]. * * * The parents have the tools and had the opportunity to be good parents but chose not to do so.
 {¶ 31} "The parents have no safe, stable house for the children. The parents have not had appropriate facilities for the children at any time since removal. The mother tried to mislead the Court about her apartment. She has a disjointed relationship with the mercurial father.
 {¶ 32} "The parents have no reasonable source of income to provide for the needs of the children though both can work. There is no likelihood that the children can be safely returned to the parents now or at any time in the near future. It is inappropriate to place the children with parents who have neither the means, nor the facility, nor the desire, to provide for the children. The children would be at great risk if they were returned to the parents at this time."
 {¶ 33} After making the foregoing findings, the trial court identified a number of reasons why an award of permanent custody to CCDJFS would be in the best interest of the children: (1) there is a reasonable probability that the children could be adopted and that they would benefit from a secure, permanent home; (2) the children had not lived exclusively with either parent for an extended period of time, and the children had visited only briefly and infrequently with either parent since their removal; (3) both parents lacked a suitable home for the children, and there was "no probability" of the situation changing "any time soon"; (4) the guardian ad litem recommended awarding CCDJFS permanent custody; (5) the children had little or no bond with either parent, and the parents "do not know how to love their [children] or want to raise [them]"; (6) the parents "clearly care more for their own needs than the needs of the [children]"; and (7) the children were capable of proper development and growth if placed in a secure, permanent home, which the parents could not provide.
 {¶ 34} On appeal, Ms. Dover addresses the trial court's findings in one page of analysis and, unfortunately, makes no specific argument with regard to any of them. As noted above, she merely asserts that the trial court "was faced essentially with the same facts" that existed when it denied CCDJFS's first motion for permanent custody. Therefore, she reasons that the trial court necessarily erred when it sustained the second permanent custody motion. We disagree. The trial court's ruling on the first permanent custody motion reveals that it came close to sustaining the motion but ultimately found that CCDJFS had not met its evidentiary burden. Approximately five months after holding the evidentiary hearing on the first motion, the trial court held a hearing on the second motion. After listening to additional testimony about events that had transpired in recent months, the trial court became convinced, by clear and convincing evidence, that Ms. Dover's parental rights should be terminated and that permanent custody should be granted to CCDJFS. Given Ms. Dover's failure to challenge the relevant findings made by the trial court, we need not conduct a lengthy analysis of them. Ms. Dover simply has failed to persuade us that the trial court's judgment is against the manifest weight of the evidence and is not supported by clear and convincing evidence. Accordingly, we overrule her second assignment of error.
 IV. {¶ 35} Based on the reasoning and citation of authority set forth above, we affirm the judgment of the Clark County Common Pleas Court, Domestic Relations Division, Juvenile Section.
FAIN, P.J., and WOLFF, J., concur.
(Hon. Stephen W. Powell of the Twelfth Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)
[1] The trial court awarded CCDJFS permanent custody of Ny'Esha Robinson, Marques Robinson, and Xiaou Yin Dover. Although CCDJFS initially sought permanent custody of the appellant's fourth child, Keaira Robinson, it later agreed to have her returned to the legal custody of her father, Keith Simpson. As a result, Keaira Robinson is not involved in the present appeal, which concerns only the trial court's decision to award CCDJFS permanent custody of the other three children.
[2] The record is devoid of a written entry from the trial court ruling on the motion for reconsideration. The trial court did acknowledge the motion, however, during the second evidentiary hearing. See August 22-23, 2002, Transcript, Vol. I at 9.
[3] Instead, Ms. Dover addresses only CCDJFS's request for continued temporary custody pending resolution of its renewed complaint and motion for permanent custody. According to Ms. Dover, this request "merely sought an ex parte extension of a nonexistent temporary custody order * * *." As noted above, however, the temporary custody order did exist when CCDJFS sought permanent custody because the trial court previously had extended it pending resolution of the motion for reconsideration.
[4] CCDJFS subsequently recognized as much when, confronted with Ms. Dover's motion to dismiss the request for "reconsideration," it responded by filing its renewed complaint and motion to modify temporary custody to permanent custody.
[5] Although the trial court also made findings concerning the fathers of Ny'Esha, Marques, and Xiaou Yin, the fathers have not appealed from the termination of parental rights and the award of permanent custody to CCDJFS. As a result, our analysis herein focuses on the children and Ms. Dover's ability to care for them.