OPINION
{¶ 1} Brenda Brooks is appealing the judgment of the Montgomery County Juvenile Court, which terminated her parental rights.
 {¶ 2} In May of 2000, Brooks gave birth to D.B.D.B. was Brooks' sixth child. All of Brooks' other children had been removed from her care and D.B. was taken into Montgomery County Children Services (hereinafter "MCCS") protective custody when she was only three days old. D.B. was placed with a foster family, and a case plan was created for both Brooks and Ermelio Rivera, the biological father of D.B. Rivera was previously convicted of molesting a child in Indiana. The child Rivera molested was one of Brooks' children, who was fathered by another man. Rivera served two years in prison before he was paroled. As part of the conditions of his parole, Rivera was required to complete sexual offender counseling but failed to do so. Rivera was eventually determined to have unsuccessfully completed parole.
 {¶ 3} When D.B. was initially taken from Brooks' custody, a case plan was created for Brooks to follow in order to regain custody of D.B. Brooks' case plan called for her to obtain housing on her own, maintain stable employment, and attend counseling and parenting classes. Brooks did obtain housing on her own and maintained her job as a supervisor at Taco Bell. Brooks further completed some but not all of her counseling.
 {¶ 4} In January of 2002, the case plan for Brooks and Rivera was amended. The new case plan required Rivera to undergo a professional evaluation to see if he was a risk to D.B. or any other child. The case plan called for Rivera to satisfactorily complete parole and attend a sexual offender's group. Rivera never attended any sexual offender's group counseling and was adamant that he was never going to attend. The court issued an order for D.B. not to have contact with Rivera until certain requirements had been met.
 {¶ 5} As a result of Brooks having accomplished some of the goals on her case plan, D.B. was reunified with her mother in the spring of 2002. Because D.B. had a medical problem that resulted in her having difficulty gaining weight, a nurse was assigned to D.B. and visited her regularly. The nurse made six visits to check on D.B. and advise Brooks while D.B. was in her care. After a couple months, when the nurse came for her visit, no one was home. The nurse came to the house for three weeks in a row, left her card, and sent two letters to Brooks and never received a response. The nurse never heard from Brooks again. The nurse finally contacted D.B.'s caseworker and told her to let her know if the case worker found Brooks and D.B.
 {¶ 6} Eventually, the caseworker found Brooks and D.B. living with Rivera. Because the court's order prohibited D.B. from being in contact with Rivera, D.B. was removed from her mother's care. At this point, MCCS moved for permanent custody of D.B.
 {¶ 7} A hearing was held over the course of two non-consecutive days. At the hearing, the court heard testimony from the nurse who visited D.B. while she was in Brooks' care, D.B.'s foster parent, a psychologist who interviewed Rivera, and the MCCS caseworker assigned to D.B. The psychologist for MCCS interviewed Rivera and testified at the hearing that Rivera was not a viable parent for D.B. and that placing D.B. around Rivera would place her at risk for being sexually abused. In the psychologist's opinion, D.B. could only be placed in Rivera's care if he had a sexual offender assessment, received appropriate treatment and then upon reevaluation was determined not to be a risk to his child.
 {¶ 8} The MCCS caseworker testified and reiterated that part of the case plan required Rivera to attend a sexual offender's group and satisfactorily complete parole and probation. The caseworker stated that Rivera had not been successful in completing his parole and probation and that he staunchly refused to attend a sexual offender's group. The caseworker also testified that by court order Rivera was not to have contact with D.B. Further, the caseworker testified that Brooks had provided her with a copy of a lease, as evidence that she had obtained housing, but that the lease included Rivera.
 {¶ 9} On the second day of the hearing, which was four months after the first day of the hearing, D.B.'s caseworker continued her testimony. The caseworker stated that an additional objective had been added to the Rivera and Brooks' case plan. This additional objective required Rivera to undergo a SOAP assessment. The caseworker testified that Rivera had refused to obtain the assessment. However, at the court on the second day of the hearing, Brooks' counsel said Rivera was willing to get the assessment. As a result of this change of events, the magistrate agreed to delay issuing his opinion in this case until he received a copy of the SOAP assessment, which Rivera was to have done within thirty days. The court continued taking evidence at the hearing.
 {¶ 10} The caseworker continued on to state that Brooks had been very inconsistent and sporadic in attending her counseling and had still not acted upon the caseworker's referral to the Family Service Association. Moreover, the caseworker testified that she had made it clear to Brooks that maintaining a residence with Rivera, who had been convicted of sexually molesting one of her other daughters, would make it difficult for Brooks to regain custody of D.B. Yet, despite this warning, Brooks continued to live with Rivera.
 {¶ 11} On November 18, 2003, the magistrate issued its opinion granting permanent custody of D.B. to MCCS. Brooks filed objections to the magistrate's decision on April 19, 2004. On May 27, 2004, the trial court overruled Brooks' objections and adopted the magistrate's decision as its own. Brooks filed her notice of appeal on June 11, 2004. Rivera has not filed an appeal from the trial court's determination terminating his parental rights.
 {¶ 12} Brooks raises the following as her sole assignment of error:
 {¶ 13} "The trial court erred in granting permanent custody to MCCS."
 {¶ 14} Brooks argues that the trial court erred in reaching findings of fact and conclusions of law that indicate that reunification with D.B. is not possible within a reasonable period of time when this was not supported by clear and convincing evidence. We disagree.
 {¶ 15} A parent has a fundamental right to care for and have custody of his or her child. In re Schaeffer Children (1993), 85 Ohio App.3d 683,689. Therefore, a court should only terminate a parent's rights as an alternative of last resort. In re Wise (1994), 96 Ohio App.3d 619, 624. A trial court may terminate a parent's right to his or her child and grant permanent custody to a government agency if it determines by clear and convincing evidence that the grant of permanent custody is in the best interests of the child and finds that one of the factors listed in R.C. 2151.414(B)(1) applies. R.C. 2151.414(B)(1). An appellate court gives great deference to a trial court's determination in custody matters. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. Therefore, a trial court's decision awarding permanent custody will be affirmed if it is supported by sufficient evidence to meet the clear and convincing standard of proof. In re Dylan C. (1997), 121 Ohio App.3d 115, 121.
 {¶ 16} In determining the best interests of a child, the court must consider all of the relevant factors including:
 {¶ 17} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 18} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 19} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 20} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 21} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 22} If a trial court determines that granting a motion for permanent custody would be in the best interests of the child, before the court can grant the motion it must also find that one of the following factors exists:
 {¶ 23} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 24} "(b) The child is abandoned.
 {¶ 25} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 26} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414(B)(1).
 {¶ 27} Brooks argues that she satisfied the majority of the case plan objectives set out for her in order to regain custody of D.B. The evidence presented at the hearing did show that she had maintained employment and therefore had stable income. Additionally, Brooks had completed some of her counseling and parenting classes that were recommended for her. However, Brooks failed to maintain independent housing. Although at one time Brooks had a home for herself and D.B., Brooks left that home and established a residence with Rivera. This did not constitute independent housing since it was a residence shared with Rivera.
 {¶ 28} The major obstacle preventing Brooks from regaining custody of D.B. was Brooks' continued relationship with Rivera. The evidence at the hearing demonstrates that Rivera was convicted of molesting one of Brooks' other daughters. Therefore, the court ordered that Rivera was not to have contact with D.B. At one point, D.B. had been returned to Brooks and she had remained in her care for several months. Yet, Brooks moved herself and D.B. into a home with Rivera, in contravention of the court's order prohibiting contact between Rivera and D.B. Moreover, Brooks continued to live with Rivera, even after the caseworker informed her that she was jeopardizing her chances of regaining custody of D.B. Brooks knew that Rivera pled guilty to molesting one of her other daughters and served time in prison as a result.
 {¶ 29} Brooks attempts to argue that both she and Rivera had made every effort to comply with the case plan objectives. Yet, the evidence does not support this argument. Rivera staunchly refused to attend a sexual predator group, a requirement of his case plan. Additionally, Rivera did not comply with the counseling requirements of his parole/probation supervision. Although he did undergo some psychological assessments, he refused to attend sexual offender counseling. He also staunchly refused to obtain a SOAP assessment until the morning of the second day of the dispositional hearing in this matter. Although the record does not show the results of this assessment, it appears it did not favor Rivera having contact with D.B. Referring to the report from the SOAP assessment, the magistrate noted that the report called for complete separation and lengthy counseling. Rivera had ample time to attend sexual offender counseling but did not, and D.B. had already been in the custody of children's services for almost three years. D.B.'s lengthy period in the custody of children's services demonstrates that she was in need of stability and a permanent placement.
 {¶ 30} Moreover, the most compelling evidence was that Brooks demonstrated that she was not willing to leave Rivera. When Brooks had previously regained custody of D.B., she defied a court's order and took D.B. with her to live with Rivera. Additionally, despite repeated warnings from her caseworker that she should obtain independent housing and that living with Rivera jeopardized her chances of regaining custody of D.B., Brooks continued to live with Rivera. The evidence indicated that Brooks had previously obtained independent housing. Thus, she had the financial capability to live separately from Rivera. However, she chose to live with Rivera knowing she would not regain custody of D.B. This is clear and convincing evidence that Brooks was not able to put D.B.'s needs above her own desires. Brooks flagrantly disregarded the court's orders and ignored D.B.'s safety. The psychologist testified at the hearing that having D.B. around Rivera placed her at risk of being sexually abused. Yet, Brooks continued to place her minor child in the home of a child molester, who refused to seek any counseling for his behavior. We cannot say that the trial court lacked clear and convincing evidence that D.B.'s best interests were served by the termination of Brooks' parental rights.
 {¶ 31} Additionally, the evidence supported the magistrate's finding that the factor listed in R.C. 2151.414(B)(1)(d) applied allowing the MCCS's motion for permanent custody. Except for a period of less than six months, D.B. had been in the custody of MCCS for all three years of her life. She was in the custody of children's services for more than twelve months of the last consecutive twenty two months. This necessary finding by the magistrate was supported by clear and convincing evidence.
 {¶ 32} The lower court's determination to terminate Brooks' parental rights to D.B. was supported by clear and convincing evidence, and Brooks' assignment of error is without merit and overruled.
 {¶ 33} The judgment of the trial court is affirmed.
Wolff, J. and Fain, J., concur.