OPINION
{¶ 1} Appellant Virginia Perez-Hammons ("Virginia")[1] appeals from the January 8, 2008 Decision and Judgment Entry of the Court of Common Pleas of Defiance County, Juvenile Division, terminating the parental rights of Virginia and Donald Hammons and granting permanent custody of Dallas Hammons (D.O.B. 7/1/98), Kenneth Hammons (D.O.B. 9/19/99), and Ritchard Hammons (D.O.B. 9/19/00) to the Defiance County Department of Job and Family Services ("DCDJFS"). *Page 3 
 {¶ 2} On June 29, 2000 the DCDJFS filed a complaint alleging that Shon, Dallas, and Kenneth[2] were neglected/dependent children as defined in Ohio Revised Code sections 2151.03 and 2151.04. The complaint also sought temporary custody of Shon, Dallas, and Kenneth. In its complaint, the DCDJFS alleged that (1) Shon was at risk for physical injury, and that Dallas suffered physical injury because "on June 26, 2000 Dallas Hammons, age 23 months, was struck by a train in the vicinity of his home and Shon was present, and in danger of being hurt in the same incident as his brother, all due to a complete lack of supervision by their parents;" (2) Shon, Dallas, and Kenneth all appeared neglected because "their residence was filthy and not suitable for these minor children;" and (3) Kenneth was dependent because he was in a household where other children had been neglected and therefore, he was in danger of being neglected.
 {¶ 3} We note that when Dallas and Shon were left unsupervised, resulting in Dallas being struck by the train, this was not the first time the boys were left unsupervised and left the home without parental consent or supervision. In February of the same year, Shon, then aged three, and Dallas, aged one, were found wondering the streets wearing only diapers. *Page 4 
 {¶ 4} On agreement of the parties, the children were placed in the temporary custody of relatives pursuant to the June 29, 2000 complaint. On August 24, 2000 the juvenile court issued a Judgment Entry ordering that Shon, Dallas, and Kenneth remain in the temporary custody of relatives.
 {¶ 5} On October 31, 2000 the juvenile court conducted an adjudicatory hearing on the merits of the DCDJFS's complaint. At this hearing, Donald, father of Dallas and Kenneth admitted to the allegations contained in the complaint. Virginia denied the allegations. Shon's father, Shon Hammons, failed to appear. In its November 15, 2000 Judgment Entry the juvenile court adjudicated Shon and Dallas neglected children pursuant to R.C. 2151.03. Kenneth was adjudicated a dependent child pursuant to R.C. 2151.04.
 {¶ 6} The parties agreed to proceed immediately to disposition. At disposition, the parties stipulated and agreed that it was in the best interest of the children that they be placed in the temporary custody of the DCDJFS for one year. The children were allowed to remain in relative placement during this time. The matter was scheduled for an annual review on October 25, 2001.
 {¶ 7} On October 5, 2001 DCDJFS moved to continue the temporary custody for an additional six months. The juvenile court conducted a hearing on the motion and also the annual review on October 18, 2001. In a Judgment Entry dated October 24, 2001 the juvenile court noted that the parties agreed and *Page 5 
stipulated that it was in the best interest of the children that they remain in the custody of DCDJFS for the additional six months.
 {¶ 8} On April 16, 2002 the DCDJFS filed a motion requesting that the temporary custody of DCDJFS be terminated and the children reunited with their parents and placed under the protective supervision of the DCDJFS. The April 16, 2002 motion to place Shon, Dallas, and Kenneth back with their parents was granted by the juvenile court on June 24, 2002. In a separate Judgment Entry, dated June 24, 2002, protective supervision was terminated because the family was planning to move to Wyoming.
 {¶ 9} On July 12, 2005 the DCDJFS filed a complaint alleging that Shon, Dallas, Kenneth, Ritchard, Izzibell, and Angelique were neglected children as defined in Ohio Revised Code sections 2151.03. The complaint also sought temporary custody of all six children. In its complaint, the DCDJFS alleged that the children were neglected because "the home in which they reside was found to have no electricity, there were windows missing, the children had no beds to sleep in, the food was rotting and the rest of the home was kept in an unsafe manner and in deplorable conditions for minor children to reside in. . ." The DCDJFS also moved the juvenile court for an order granting DCDJFS emergency custody of Shon, Dallas, Kenneth, Ritchard, Izzibell, and Angelique. *Page 6 
 {¶ 10} On July 13, 2005 the juvenile court issued an ex parte order authorizing the DCDJFS to take emergency custody of all six Hammons children. The matter was then continued for a probable cause hearing on July 19, 2005. In a Judgment Entry dated July 22, 2005, the juvenile court found probable cause for the issuance of the ex-parte emergency custody order. The court ordered that the children remain in the custody of DCDJFS.
 {¶ 11} In a Judgment Entry dated September 14, 2005, Virginia and Donald asked the juvenile court to accept their admission that the children were neglected as alleged in the complaint. Accordingly, the juvenile court found that all six Hammons children were neglected children as defined by R.C. 2151.03. On June 22, 2006, DCDJFS asked that all six Hammons children remain in temporary custody for an additional six months. On July 12, 2006 the juvenile court granted the extension of temporary custody.
 {¶ 12} On November 9, 2006 the DCDJFS filed a motion seeking the commitment of all six Hammons children to the permanent custody of the agency. The juvenile court conducted a hearing on the DCDJFS's motions for permanent custody on January 31, 2007. In a Judgment Entry dated January 31, 2007 the juvenile court stated that at the hearing Virginia and Donald both surrendered their parental rights to Angelique and Izzibell, committing them to the permanent *Page 7 
custody of DCDJFS for eventual adoption. Virginia also surrendered her parental rights to Shon to the permanent custody of DCDJFS for eventual adoption.
 {¶ 13} As part of the agreement, the parties agreed that Dallas, Kenneth, and Ritchard would be returned to the custody of Donald and Virginia and placed under the protective supervision of the DCDJFS.
 {¶ 14} On April 3, 2007 the DCDJFS obtained an emergency ex-parte order granting temporary custody of Dallas, Kenneth, and Ritchard to the DCDJFS. A probable cause hearing was scheduled for April 4, 2007. In a Judgment Entry dated April 25, 2007, the juvenile court found probable cause for the ex parte order granting temporary custody to DCDJFS. The DCDJFS filed a motion for permanent custody of Dallas, Kenneth, and Ritchard on April 25, 2007.
 {¶ 15} A hearing was held on the DCDJFS motion for permanent custody on September 18, 2007. At the beginning of that hearing, Donald indicated that he did not oppose the DCDJFS's motion for permanent custody and withdrew from the proceedings, relinquishing his parental rights as to Dallas, Kenneth, and Ritchard.
 {¶ 16} In a Decision and Judgment Entry, dated January 8, 2008, the juvenile court found that it was in the best interests of Dallas, Kenneth, and Ritchard to grant permanent custody to the DCDJFS. Accordingly, the juvenile *Page 8 
court terminated Virginia's parental rights to each child and awarded permanent custody of Dallas, Kenneth, and Ritchard to the DCDJFS.
 {¶ 17} Virginia now appeals, asserting three assignments of error.
 ASSIGNMENT OF ERROR I THE TRIAL COURT VIOLATED THE REQUIREMENT OF SECTION 2151.31, ORC AND VIOLATED THE DUE PROCESS OF THE PARENTS BY FAILING TO HOLD A PROBABLE CAUSE HEARING FOLLOWING AN EX PARTE ORDER TAKING THE CHILDREN INTO CUSTODY.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT GRANTING THE AGENCY PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN WHEN THE WISHES OF THE CHILDREN WERE NOT CONSIDERED.
 ASSIGNMENT OF ERROR III THE DECISION OF THE TRIAL COURT TO GRANT THE AWARD OF PERMANENT CUSTODY TO THE DEFIANCE COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
 {¶ 18} In her first assignment of error, Virginia argues that the juvenile court violated the requirement of R.C. 2151.31, and due process, by failing to hold a probable cause hearing after granting the April 3, 2007 ex-parte order giving DCDJFS temporary emergency custody of Dallas, Kenneth, and Ritchard. *Page 9 
 {¶ 19} Revised Code 2151.31 governs the use of ex-parte orders to grant emergency temporary custody. When a juvenile court grants an ex-parte emergency temporary custody order, the juvenile court must hold a hearing pursuant to R.C. 2151.31(E) which provides as follows:
 If a judge or referee pursuant to division (D) of this section issues an ex parte emergency order for taking a child into custody, the court shall hold a hearing to determine whether there is probable cause for the emergency order. The hearing shall be held before the end of the next business day after the day on which the emergency order is issued, except that it shall not be held later than seventy-two hours after the emergency order is issued.
 {¶ 20} In the present case, the ex parte order granting emergency temporary custody to DCDJFS was granted on April 3, 2007. In the same order, the juvenile court scheduled a probable cause hearing for April 4, 2007 at 8:30 a.m. According to the April 25, 2007 Judgment Entry of the juvenile court, a probable cause hearing was held on April 4, 2007. In her brief, Virginia acknowledges that a hearing was held on April 4, 2007. However, she contends that "the only discussions in the April 4th hearing were with reference to appointing counsel and for picking a hearing date." App. Br. At 11.
 {¶ 21} Turning to Virginia's argument that the hearing held did not actually determine probable cause, we note that at the hearing, the juvenile court began by explaining to Donald and Virginia that they had a right to counsel anytime they were in court. (Tr.p. 3). Pursuant to this discussion, the juvenile court informed *Page 10 
them that, if they wished, the probable cause hearing could be continued to give them time to consult with counsel. (Id.). Both Donald and Virginia requested that counsel be appointed. (Tr.p. 4). Because the parties wished to be represented by counsel at the probable cause hearing, the juvenile court appointed counsel for both Virginia and Donald, and rescheduled the probable cause hearing for the next week. The State of Ohio grants parents of any neglected or dependent child the right to be represented by counsel at "all stages of the proceedings." R.C. 2151.352; In re Ramsey Children (1995), 102 Ohio App.3d 168, 169,656 N.E.2d 1311.
 {¶ 22} After counsel was appointed, a hearing was held on April 17, 2007 to discuss the continued custody of the children. At this time the juvenile court found that it was in the continued best interest of the children for the Hammons children to remain in the custody of DCDJFS. We note that we were not provided with a transcript of the April 17, 2007 hearing.
 {¶ 23} However, given that hearings were held on April 4, and April 17, 2007 we cannot find that the juvenile court did not comply with the requirements of R.C. 2151.31. Moreover, we note that if Virginia and Donald had requested counsel, but were forced to go forward with a probable cause hearing on April 4, 2007, we would likely be asked to review whether the trial court erred in denying their right to counsel. *Page 11 
 {¶ 24} Moreover, we note that no objection to the trial court's resolution of the ex-parte emergency temporary custody hearing was ever raised prior to this appeal. Case law exists in Ohio to suggest that by not objecting to the procedures utilized by the juvenile court, earlier, Virginia has waived any objection to this procedure on appeal. In reCareuthers (May 2, 2001), 9th Dist. No. 20272.
 {¶ 25} Finally, even if we were to find that the trial court erred in granting the ex-parte temporary custody order, it would not be prejudicial to Virginia with respect to the Judgment being appealed. Dallas, Kenneth, and Ritchard had all been adjudicated neglected children and were currently under the protective supervision of the DCDJFS. This Court doubts that given that Dallas, Kenneth, and Ritchard were already adjudicated neglected children, any additional proof was needed to place them into the temporary custody of the DCDJFS.
 {¶ 26} Accordingly, Virginia's first assignment of error is overruled.
 {¶ 27} Prior to addressing Virginia's second and third assignments of error, we must first address the nature of this appeal. Our review of a grant of permanent custody begins by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic' civil right. In re Franklin, 3rd Dist. Nos. 9-06-12, 9-06-13, 2006-Ohio-4841 citing In re Hayes (1997), 79 Ohio St.3d 46, 48,679 N.E.2d 680. The Supreme Court of Ohio has held that a parent "must be *Page 12 
afforded every procedural and substantive protection the law allows."In re Hayes, supra, quoting In re Smith (1991), 77 Ohio App.3d 1, 16,601 N.E.2d 45.
 {¶ 28} Additionally, the trial court is vested with broad discretion in determining the allocation of parental rights and responsibilities for the care of minor children. Blacker v. Wilhelm, 6th Dist. No. WD-04-003, 2005-Ohio-317 citing Miller v. Miller (1983),37 Ohio St.3d 71, 74, 523 N.E.2d 846. As a trial court is in the best position to weigh witness credibility and evaluate a child's needs, the standard for reviewing a trial court's grant of permanent custody is abuse of discretion. In re Rinaldi, 3rd Dist. No. 1-02-74, 2003-Ohio-2562. Therefore, absent an abuse of that discretion, a trial court's decision regarding the allocation of parental rights and responsibilities must be upheld. Masters v. Masters (1994), 69 Ohio St.3d 83, 85, 630 N.E.2d 665. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id. Therefore, it is within these constructs that we must examine Virginia's second and third assignments of error.
 {¶ 29} Taken together, Virginia's remaining assignments of error allege: (1) that the juvenile court abused its discretion in terminating Virginia's parental *Page 13 
rights and granting permanent custody of Dallas, Kenneth, and Ritchard to the DCDJFS as permanent custody was not in the children's best interest and against the children's wishes; and (2) that the court's grant of permanent custody was not supported by clear and convincing evidence.
 {¶ 30} Before a juvenile court may terminate parental rights and award permanent custody of a child to a properly moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2141.414(D). In re D.M., 9th Dist. Nos. 22732, 22749, 2005-Ohio-6740 at ¶ 11
citing R.C. 2151.414(B)(1)(a) through (d) and (2); see also In reWilliam S. (1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 739.
 {¶ 31} Clear and convincing evidence is that which will produce in the trier of fact `a firm belief or conviction as to the facts sought to be established.' In re A.B. 9th Dist. No. 22437, 2005-Ohio-1273 at ¶ 9; see also In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368,481 N.E.2d 613, quoting Cross v. Ledford (1954), 161 Ohio St.469,120 N.E.2d 118 at paragraph three of the *Page 14 
syllabus. An appellate court will not reverse a trial court's decision on parental rights and custody unless it finds that the decision is unsupported by "sufficient evidence to meet the clear and convincing standard of proof." In re Dylan C. (1997), 121 Ohio App.3d 115, 121,699 N.E.2d 107.
 {¶ 32} In analyzing the first prong of the permanent custody test, we note that the trial court must first determine, by clear and convincing evidence, whether any of the subsections of R.C. 2151.414(B)(1) have been met.
 {¶ 33} The evidence demonstrated that Dallas, Kenneth, and Ritchard have all been in the temporary custody of the DCDJFS for at least 12 months of a consecutive 22-month period prior to the DCDJFS filing its motion for permanent custody.[3] See R.C. 2151.414(B)(1)(d). Based on the foregoing, we find that the record supports the juvenile court's findings so as to satisfy the first prong of the permanent custody test. *Page 15 
 {¶ 34} Turning our attention to the second prong of the permanent custody test, the "best interest of the child" standard, we note that "[t]he best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. As previously stated, clear and convincing evidence is that which will produce in the trier of fact `a firm belief or conviction as to the facts sought to be established.'"In re A.B. 9th Dist. No. 22437, 2005-Ohio-1273 at ¶ 9; see also In reAdoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v.Ledford (1954), 161 Ohio St.469 at paragraph three of the syllabus. An appellate court will not reverse a trial court's decision on parental rights and custody unless it finds that the decision is unsupported by "sufficient evidence to meet the clear and convincing standard of proof." In re Dylan C. (1997), 121 Ohio App.3d 115, 121, 699 N.E.2d 107.
 {¶ 35} R.C. 2151.414 provides, in relevant part, as follows:
 (D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public *Page 16 children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 36} At the permanent custody hearing, the juvenile court heard testimony from various individuals specifically regarding the elements contained in R.C. 2151.414(D).
 {¶ 37} The juvenile court heard testimony explaining how the Hammons family first came to the attention of DCDJFS when, in February 2000, Tom Babcock, who is now retired from the Defiance Police Department found Shon and Dallas wandering down the street, wearing only diapers, at approximately 9:40 a.m. (Tr.p. 61). When the boys were found, they were dirty and muddy. Babcock took them down to the police station before returning to the area to attempt to identify where they lived. (Tr.p. 62-64). An hour or two later, it was determined that Virginia was the mother of these two children, when police found her home with the door open, and could hear a child crying inside. (Tr.p. 65). Virginia was issued two summonses for child endangering based on this incident. (Tr.p. 66).
 {¶ 38} Michelle Reinhart, the Supervisor of Children's Services, testified that in June 2000, Dallas was hit by a train when Shon and Dallas were out of the *Page 17 
house, unsupervised, wandering around. Shon, three years old, and Dallas, one year old, were playing on the train tracks when Dallas was struck by the train. (Tr.p. 91). Dallas suffered serious injuries as a result, including injuries that required brain surgery. (Tr.p. 93). Based on the train accident, both Virginia and Donald were charged with and convicted of Child Endangering. (Id.).
 {¶ 39} The children were placed in relative foster placements after the June 2000 incident. The family was eventually reunified, and then moved out of DCDJFS jurisdiction to Wyoming. (Tr.p. 94).
 {¶ 40} Reinhart testified that, prior to the Hammons moving back to Defiance County, a Wyoming agency contacted DCDJFS letting DCDJFS know that the Hammons were moving back into the area and that the Wyoming agency had concerns about the care the Hammons children were receiving. (Tr.p. 95). According to Reinhart, the Wyoming records stated as follows:
 Reinhart: . . . but the concerns from Wyoming was that the home that was left, the landlord had called out Law Enforcement and also Children's Services at that point to view the residence. The home was filthy and it appeared that the children were locked in an upstairs bedroom.
 Yoder: What made those — ?
 Reinhart: There were scratch marks around the door in that door frame in the upstairs bedroom. It looked to be what appeared to be feces spread on the walls in that upstairs bedroom and then just the trash and filth throughout the home.
(Tr.p. 100). *Page 18 
 {¶ 41} Reinhart then testified that on April 8, 2005, DCDJFS received a report from Tim Johnson, a Parole Officer, stating that he had been to the Hammons home and that "the home was very dirty and smelled like feces throughout the home. The girls had diapers that had poop and pee seeping through them." (Tr.p. 101-102). The Hammons were ordered by DCDJFS to clean up the home.
 {¶ 42} On July 11, 2005 the DCDJFS was notified by a mandatory reporter that Shon disclosed physical abuse. (Tr.p. 103). Donald admitted to hitting Shon and apparently hit the mandatory reporter to demonstrate how hard he hit Shon. (Id.). Apparently, Shon also had marks on his forearms that he claimed Virginia had caused. (Id.).
 {¶ 43} Based on this information, Steve Delaney with the Defiance Police Department testified that he went to the Hammons home with Anna Kuhlman from Human Services and Tim Johnson from the Adult Parole Authority when the children were to be removed from the home on July 12, 2005. Delaney testified that he found five of the children home alone with a babysitter. (Tr.p. 72). The electric had been shut off, there was a cooler of spoiled food sitting on a counter, as well as spoiling food contained in a cool refrigerator and freezer. (Id.). Delaney testified that the bathroom was filthy, including feces sitting inside the *Page 19 
toilet bowl and old bathwater stagnating in the bathtub with an empty tuna can and a tampon applicator floating in the water. (Tr.p. 72-73).
 {¶ 44} A back porch was found to be the "diaper storage area" which contained bags of dirty diapers. (Id.). Upstairs, Delany found a window that was missing glass, but was covered by a propped up door. (Id.). Power tools were found plugged in upstairs, but sitting unused because the house has no power. (Id.). Moreover, Delany testified that there were cat feces strewn throughout the house. (Tr.p. 78).
 {¶ 45} All six children were taken into protective custody until Virginia and Donald relinquished their parental rights to Shon, and the twins. See Judgment Entry January 31, 2007. Based on this agreement, the three boys, Kenneth, Dallas, and Ritchard would be returned to Virginia and Donald. (Tr.p. 116). The boys were returned on January 28, 2007 but remained in the protective supervision of DCDJFS. (Tr.p. 117). Protective supervision included thirteen conditions which the Hammons were to comply with in order to keep the boys in the home. (Id.). If the conditions were violated, the boys would be returned to the temporary custody of the DCDJFS.
 {¶ 46} In the midst of all of this chaos, Donald contacted the DCDJFS with a tape that contained a recording of Virginia screaming at the boys. Virginia threatened the boys, screaming that "they needed to fucking shut up or else she *Page 20 
would cut their fucking Adam's apple out." (Tr.p. 225). Donald also related, at this time, to Amy Linebrink a social worker for DCDJFS, that Virginia could not get Ritchard to take his medication. To make him take it, Virginia would cover his mouth and nose to make him swallow. (Tr.p. 226). Virginia would also throw water on Ritchard if he would not comply and take the medication. (Tr.p. 227).
 {¶ 47} After receiving this information, Linebrink went to speak with the children at their school. Kenneth disclosed that he and his brothers had been hit with a belt. (Tr.p. 227). Dallas recalled that Virginia had recently told the boys to stop calling Donald "Dad." Linebrink received a call on April 2, 2007 from Dallas' elementary school, stating that his brother had bitten him. Dallas stated that it still hurt and he thought it might be bleeding. (Tr.p. 234). Dallas also stated that his mother told him it was fine and did not punish Ritchard for biting him. (Id.). When Linebrink examined Dallas, she also noticed that he had two older bite marks that had bruising and teeth marks. (Tr.p. 235). At this point, Dallas, Kenneth, and Ritchard were returned to the temporary custody of DCDJFS.
 {¶ 48} The trial court heard the testimony of Kenneth Schemburg, Professor of Clinical Psychology at Bowling Green State University, who testified that Virginia admitted to hitting her children while being interviewed for a *Page 21 
psychological evaluation. (Tr.p. 29). As a result of Virginia's evaluation, Dr. Schemburg concluded that
 Ms. Perez-Hammons is a person with substantial limitations relative to her capacity to effectively care for her six children. She has limited judgment regarding the establishment of effective rules and regulations for her family. Thus she may continue to experience considerable difficulty raising children, this is especially true if, as the history suggests, these children have special educational and psychological needs at that time.
(Tr.p. 32).
 {¶ 49} Perhaps most persuasive, the juvenile court heard the testimony of the foster parents of each of the children. Julie Luderman, a licensed foster parent, who took custody of the Dallas, Kenneth, and Ritchard after the issuance of the emergency temporary custody order on April 3, 2007. Luderman stated that when Dallas, Kenneth, and Ritchard first came into her home, they would fight constantly, bite, hit, kick, and threaten each other, and just tear up things.[4] When the Hammons boys first arrived at the Luderman home they were extremely violent with each other, and destructive. (Tr.p. 407-411).
 {¶ 50} Luderman testified that with consequences, such as revocation of *Page 22 
privileges, she was able to get the boys to complete chores each day and do their homework on time. After the Hammons boys were in the home for a while, Luderman stated that they could be taken out to a restaurant, or to any public place. She also stated that the boys got along well with her own daughters and called her and her husband Mom and Dad. Moreover, in his foster home, Ritchard had not bitten anyone for approximately three months prior to trial. (Tr.p. 413).
 {¶ 51} During the course of the Hammons boys stay with the Ludermans, visits with Virginia have occurred. Luderman noticed that after these visits, the boys would become more aggressive with each other and engaged in more fighting. Luderman also noticed that after visits the boys would say things such as "Mom said you can't do this or we're going to do that." (Tr.p. 420).
 {¶ 52} Finally, the juvenile court was presented with the report of Tamara Renollet, the Guardian Ad Litem. With respect to the home environment, Renollet found as follows:
 The chronic mental and emotional illness of the parents were so severe that it made them unable to provide an adequate permanent home for the children. Further, the parents have continued to allow these children to suffer emotional abuse and neglect and the seriousness, nature or likelihood or recurrence made the children's placement with their parents a threat.
 {¶ 53} Moreover, Renollet stated that she met with Dallas, Kenneth, and Ritchard. Dallas reported that he called his foster mother "Mom," even though he stated he did miss Virginia. Renollet also spoke with Kenny, who had, from June *Page 23 
18-23, 2006 and January 2-5, 2007, spent time in the Kobacher Center, a mental health facility for juveniles and teens. Kenny appeared to become frustrated very easily. Finally, Renollet met with Ritchard. Ritchard reported that he missed Virginia, and then continued to explain how Donald had pinched him in the belly, and reported that he ruined the bedroom carpet by urinating on the floor. The GAL reports that it would be in the best interests of the children for permanent custody to be granted to DCDJFS. It appears that all three boys did miss Virginia, and to a lesser extent, Donald.
 {¶ 54} Virginia seems to argue that the trial court erred by not having Kenneth, Dallas, and Ritchard testify directly concerning their wishes. However, the Ohio Supreme Court in In re C.F. determined that
 when determining the wishes of the child, a court is required by R.C. 2151.414(D)(2) to consider the wishes of the child, "as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." The statute does not impose the additional requirement that the trial court also consider whether the children want to testify or whether testifying would be detrimental to them.
In re C.F., 113 Ohio St.3d 73, 83, 862 N.E.2d 816, 2007-Ohio-1104.
 {¶ 55} In the present case, the children did not testify, but were instead interviewed by the guardian ad litem. Moreover, each boy indicated that he missed his mother, although Dallas stated that he referred to his foster mother as "Mom." It is also important to note that both Luderman and Granger, foster *Page 24 
parents for the Hammons boys, indicated that these children lacked an appropriate level of maturity for their ages. Moreover, one can surmise from the record that these children would not have been able to testify, in court, concerning their wishes, due to their ability to become frustrated easily and act out and their limited maturity, despite their ages.
 {¶ 56} After considering the testimony and evidence presented at the September 19, 2007, and October 17, 1007 permanent custody hearings, the GAL's written report and recommendation, and the parties' written arguments, and having reviewed the history of the case, on January 8, 2008 the juvenile court entered a decision and judgment entry stating its decision regarding permanent custody of Dallas, Kenneth, and Ritchard. In its entry, the juvenile court stated, in relevant part, as follows:
 All of the testimony provided by the State at hearing supports completely the findings of these psychological evaluations. The natural father, Donald, is totally uninterested and uninvolved with these children and has been forever. The natural mother is incapable of any consistent parenting. The picture that emerges is one of utter chaos in the home in which the children are unstimulated [sic], undisciplined, behaving almost like feral children.
 All of these children have significant problems, but these problems are greatly reduced and their behavior much controlled by effective foster families. The overall conclusion is that these children have a chance, if Permanent Custody is granted, and no chance at all if it is not. *Page 25 
 Mr. Seibel, in his Memorandum in Closing Argument, on behalf of the natural mother, berates the State for not taking all six children in November of `06, but only the three that were surrendered. He claims that by returning these three to Virginia Perez-Hammons, the State acknowledged an insufficient case. The Court's memory of the circumstances is somewhat different. The arguments of defense counsel at that time were that mother was simply overwhelmed by six children and probably could handle some of them but not all of them. The Court took that chance after the surrender of the three other children and returned Kenneth, Dallas and Ritchard to Virginia under Protective Supervision.
 In less than two months chaos was again reigning in the home. All of the providers of services who testified indicated that, as did the landlord. And in less than two months, with only three of the children, Virginia Perez-Hammons was requesting, "respite care." Then comes the injury to Dallas inflicted by Ritchard, the bite mark, causing yet again the removal in April of `07.
 The Court further finds that the Department of Job and Family Services has shown these children to be adoptable, and has shown their need for a safe, secure, and stable home. The testimony of the foster parents indicates that they thrive in that environment.
 Having considered the interaction, or lack thereof, of the parents with each of these children, each boys' greatly improved behavior and educational opportunity's in foster homes, and, having further considered the custodial history of each of the children, and their need for a legally secure placement, and, further finding that those needs can best be met by a grant of Permanent Custody, and adoption of these children, the Court therefore grants the State's Motion for Permanent Custody to the Department of Job and Family Services. The evidence is overwhelming that this family cannot be fixed, and that the best interests of these children require such action. *Page 26 
 {¶ 57} Based on the foregoing, we find that the record supports the juvenile court's finding that the grant of permanent custody of Dallas, Kenneth, and Ritchard to the DCDJFS would be in the best interests of the children based upon an analysis of the factors contained in R.C. 2151.414(D) so as to satisfy the second prong of the permanent custody test.
 {¶ 58} Thus, we find that the juvenile court carefully considered all of the evidence presented and engaged in a thorough analysis of both prongs of the permanent custody test as set forth in R.C. 2151.414. Accordingly, we find that the juvenile court's termination of Virginia and Donald's parental rights and grant of permanent custody of Dallas, Kenneth, and Ritchard to the DCDJFS was supported by clear and convincing evidence. Virginia's second and third assignments of error are overruled.
 {¶ 59} Therefore, the January 8, 2008 Judgment Entry of the Court of Common Pleas of Defiance County, Juvenile Division, terminating Virginia's and Donald's parental rights and granting permanent custody of Dallas, Kenneth, and Ritchard to the Defiance County Department of Job and Family Services is affirmed.
Judgments Affirmed.
 PRESTON and ROGERS, J.J., concur.
[1] We note that Virginia is also the parent of Shon Perez-Hammons (D.O.B. 8/27/96), Izzibell Hammons (D.O.B. 8/28/03), and Angelique Hammons (D.O.B. 8/28/03). These children have already been surrendered to the permanent custody of DCDJFS. See Judgment Entry January 31, 2007.
[2] Although it has been previously noted that Shon, Izzibell and Angelique have already been surrendered to permanent custody and are not the subject of this appeal, they will be referred to throughout this case so as to better illustrate this family's history and to accurately reflect all the children involved in a given action.
[3] For the purposes of division (B)(1) of R.C. 2151.414, a child shall be considered to have entered the temporary custody of an agencyon the earlier of the date that the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty (60) daysafter the removal of the child from the home. (Emphasis added). In the instant case, Dallas, Kenneth, and Ritchard were adjudicated neglected at a hearing conducted on September 7, 2005. This matter immediately proceeded to disposition on that date and on September 14, 2005 the juvenile court issued a Judgment Entry ordering that the appropriate disposition was for Dallas, Kenneth, and Ritchard to be placed in the temporary custody of the DCDJFS. Dallas, Kenneth, and Ritchard remained in the temporary custody of the DCDJFS without interruption until January 31, 2007 when they were returned, under protective supervision, to the custody of their parents. However, Dallas, Kenneth and Ritchard were again removed on April 3, 2007 pursuant to an ex-parte emergency order of temporary custody. After that order, Dallas, Kenneth, and Ritchard remained in the custody of DCDJFS. Accordingly, the children were in the temporary custody of the DCDJFS for at least 12 months of a consecutive 22-month period pursuant to R.C. 2151.414(B)(1)(d).
[4] Luderman stated that when the boys came to her they would tear clothes apart, scratch CD's, and tear books apart. (Tr.p. 429). A foster parent who previously kept the boys, Linda Ganger, testified that the boys would break any toys they had, tore up baseball hats, and would pick the stuffing out of pillows and from underneath the couch. (Tr.p. 450-451). Granger also stated that when the boys first came to her, they opted not to use the bathroom but to urinate on a recliner in their room. Once this was discovered and the recliner removed, the boys put pillows in the corner on which to urinate. (Id.). Granger stated that when the boys first came to her home, Dallas had night terrors. (Id.). She believed these stopped because in her home, the boys were no longer allowed to watch inappropriately frightening movies. (Id.). *Page 1