[Cite as *In re A.J.*, 2018-Ohio-1052.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

IN RE: A.J., JR.

:
:
:            Appellate Case No. 27808
:
:            Trial Court Case No. 2001-2425
:
:            (Appeal from Common Pleas Court-
:            Juvenile Division)
:
:

. . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of March, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Appellee-Montgomery County Children Services

PATRICK J. CONBOY, II, Atty. Reg. No. 0070073, 5613 Brandt Pike, Huber Heights, Ohio 45424
        Attorney for Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} A.J., Sr. appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, awarding permanent custody of his son, A.J., Jr. to Montgomery County Children Services (MCCS). He contends that the juvenile court's decision to grant permanent custody of the child to MCCS is not supported by clear and convincing evidence. He further contends that the court abused its discretion by denying his motion for a continuance of the hearing date. Finally, he contends that he was denied the effective assistance of counsel.

{¶ 2} We conclude that the juvenile court did not err in granting permanent custody of A.J., Jr. to MCCS. We further conclude that the juvenile court did not abuse its discretion by denying the motion for continuance. Finally, even assuming that counsel's conduct was not reasonable, we find no prejudice and thus reject the claim of ineffective assistance of counsel.

{¶ 3} Accordingly, the judgment of the juvenile court is affirmed.

### I. Facts and Course of the Proceedings

{¶ 4} A.J., Jr. (hereinafter "A.J.") was born in 2000 to F.E. (hereinafter "Mother"). A.J. was born with cerebral palsy. He has an IQ of 40, which places him in the lower one-percent of the population. He operates at the level of a six-year old. His condition requires physical therapy, occupational therapy, speech therapy and ongoing medical treatment. A paternity test confirmed that A.J., Sr. (hereinafter "Father") is A.J.'s biological father.

{¶ 5} A.J. was adjudicated dependent in 2001. He was placed in the protective

supervision of MCCS and returned to the care of Mother. The agency developed case plans for both parents. Father was required to obtain stable housing and employment, undergo a mental health and anger management assessment and program, and to refrain from any further acts of violence.[1]

{¶ 6} In 2003, MCCS filed a motion to modify the disposition to temporary custody as Mother had failed to cooperate with the terms of her case plan. In 2004, A.J. was placed in the legal custody of his paternal grandmother. At some point, Father moved to Indiana. As of 2010, Father was incarcerated in an Indiana prison for assaulting a different woman.

{¶ 7} In May 2015, MCCS became aware that A.J. had been hospitalized for malnourishment. Medical staff found bruising over half of his body. He was 13 years old at the time and weighed only 67 pounds. The grandmother admitted to hitting him and preventing him from eating. At that time, Father was incarcerated in Indiana and MCCS was unable to locate Mother. A.J. was placed in the temporary custody of a paternal cousin. In February 2016, MCCS filed a motion seeking to have temporary custody transferred from the cousin to the agency as the cousin indicated that he was unable to care for A.J. due to A.J.'s special needs. The agency also filed a motion for a first extension of temporary custody. A.J. was placed in a foster home.

{¶ 8} On October 12, 2016, MCCS filed a motion for permanent custody. A hearing was set for January 5, 2017. On January 4, 2017, Father, who remained incarcerated in Indiana, filed a motion for continuance through his attorney. In a letter

---

[1] The record demonstrates that Mother had previously obtained a protection order against Father due to acts of domestic violence.

written by Father to his attorney, a copy of which was attached to the motion to continue, Father stated that if he is approved for work release, he would get out of prison by May or June 2017. Thus, he sought a continuance of approximately six months.

{¶ 9} The motion was denied, and the hearing was conducted as scheduled. During the hearing, Mother voluntarily relinquished her parental rights. Following the hearing, the magistrate filed a decision awarding permanent custody to the agency. Father filed objections which were ultimately overruled by the trial court.

{¶ 10} Father appeals.

## II. Permanent Custody Determination

{¶ 11} Father's first assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING MCCS' MOTION FOR PERMANENT CUSTODY.

{¶ 12} Father contends that the record does not support the juvenile court's decision to award permanent custody to MCCS. Specifically, he contends that the record does not support a finding that the child could not be placed with him within a reasonable time.

{¶ 13} In Ohio, R.C. 2151.414(B)(1) authorizes a juvenile court to terminate parental rights and grant permanent custody to a state agency upon a finding, by clear and convincing evidence, that permanent custody is in a child's best interest and that the child has been abandoned (R.C. 2151.414(B)(1)(b)) or the child cannot be placed with a parent within a reasonable period of time or should not be placed with either parent (R.C. 2151.414(B)(1)(a)).

{¶ 14} "Clear and convincing evidence is that level of proof which would cause the trier of fact to develop a firm belief or conviction as to the facts sought to be proven." *In re Dylan C.*, 121 Ohio App.3d 115, 121, 699 N.E.2d 107 (6th Dist. 1997). "An appellate court will not reverse a trial court's determination concerning parental rights and child custody unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof." *Id.* (Citation omitted.) "When a judgment is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *In re Conner*, 2d Dist. Montgomery No. 18808, 2001 WL 1345955, at *1. (Citation omitted.) "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the [judgment].' " *Id.* (Citation omitted.)

{¶ 15} R.C. 2151.011(C) provides that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.414(E) identifies factors for determining whether a child cannot or should not be placed with either parent within a reasonable time.

{¶ 16} With respect to abandonment, the juvenile court found that Father has had "little to no involvement with the child" for almost 14 years, including periods during which there was no contact for over 90 days at a time. The court also found that sections (1),

(10), (12), (13) and (16) of R.C. 2151.414(E) were applicable in this case, and thus, found that the child cannot be placed with Father within a reasonable time, or should not be placed with Father. We agree.

{¶ 17} The record demonstrates that the child has never been in the custody of Father. Father has been in and out of prison since 2010. During that time, he did not seek an order of visitation with the child. Further, there is evidence that Father has not seen the child since a 2015 visit during a period that he was not in prison. Thus, we conclude that the record supports a finding that Father abandoned A.J.

{¶ 18} We next turn to the issue of whether the child could or should be returned to Father. R.C. 2151.414(E)(1) directs the court to consider whether:

> * * * notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the problems that initially caused the child to be placed outside the home. * * * [T]he court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 19} As noted, case plans were developed for both Mother and Father. In the earlier case plans, Father was required to participate in mental health and anger management therapy, obtain housing and employment, and to refrain from further acts of violence. The case plan created in 2015, while Father was incarcerated in Indiana,

merely required him to contact MCCS. The caseworker testified that she mailed the case plans to Father. She further testified when she sent him mail, a stamped envelope was included so that he could respond. She testified that Father received copies of the Semi-Annual Reviews, as well as contact information for the agency. However, he failed to contact her. Based upon these findings, the juvenile court found that Father had failed to comply with his 2015 case plan, and thus, failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. The record also supports a finding that he never complied with his original case plan, and that he affirmatively violated the plan by assaulting his wife.

{¶ 20} R.C. 2151.414(E)(10) looks to the issue of whether the parent has abandoned the child. As noted above, the record supports a finding that Father has abandoned the child by failing to visit, or seek visitation, with the child, thereby satisfying both of these provisions.

{¶ 21} The juvenile court also found the following provision of R.C. 2151.414(E)(12) applicable:

> The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

{¶ 22} The juvenile court found that the evidence supported a finding that Father's release date is January 2019, more than eighteen months after the dispositional hearing. The court concluded that there was no evidence to demonstrate that he would be released prior to that date. Father's letter to his counsel was based upon the speculation that he

would be released early. There was no competent evidence submitted to confirm his claim.

{¶ 23} The juvenile court found R.C. 2151.414(E)(13) applicable as there is competent evidence that Father has been repeatedly incarcerated. He was convicted of assault and strangulation of his wife during a domestic violence incident. In another case, he was convicted of stabbing his wife.

{¶ 24} Finally, the court found the "any other factor the court considers relevant" provision of R.C. 2151.414(E)(16) applicable. The court considered A.J.'s special needs and the fact that they were being well met by his current placement, and found that this factor weighs in favor of an award of custody to the agency.

{¶ 25} Once the juvenile court determines that there is clear and convincing evidence that one of the factors enumerated in R.C. 2151.414(E) apply, the court must turn to the issue of whether a grant of permanent custody to the agency is in the best interest of the child. To that end, the court must consider the following factors set forth in R.C. 2151.414(D)(1):

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive

twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 26} The record demonstrates that A.J. is currently residing in a foster home where his special needs are being met by a foster mother who takes only special needs children. The record demonstrates that the foster mother and A.J. are well-bonded, and that A.J. appears happy. He is currently enrolled in school and is doing well. The record is devoid of any evidence to indicate that A.J. has any relationship with his father.

{¶ 27} The Guardian Ad Litem recommended that the court award permanent custody to the agency. The record shows that A.J. has never been in the custody of his father. Given his special needs, the child needs a legally secure placement. Whenever father is released from prison, and we note that he has not disputed the court's finding regarding a 2019 release date, he will need to obtain employment, housing and provide for A.J.'s special needs. Father will also need to undergo the required mental health treatment set forth in his previous case plan. Additionally, if Father is required to remain in Indiana upon his release, a home study would have to be conducted after he obtained housing. The record shows that Father did not comply with the earlier case plan and it shows that he failed to even attempt to contact the agency as required by the 2015 case plan despite the efforts of the case worker to contact him.

{¶ 28} Upon review, we find clear and convincing evidence to support the trial

court's determination that an award of permanent custody to MCCS was in A.J.'s best interest. The first assignment of error is overruled.

### III. Failure to Continue Hearing Date

{¶ 29} The second assignment of error asserted by Father states:

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR CONTINUANCE AND/OR ORDER TO ATTEND HEARING PRIOR TO RELEASE.

{¶ 30} Father contends that the juvenile court should have granted a continuance of the hearing. In support, he argues that "it was possible" that he would be released from prison in May or June of 2017. He further notes that there had not been a second extension of temporary custody.

{¶ 31} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). Therefore, an appellate court will not reverse a trial court's decision to deny a motion for continuance unless it finds that the trial court abused its discretion. *Id.* The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 32} Those factors to be considered in determining a motion for continuance include: (1) the length of the delay requested, (2) whether other continuances had been requested and received, (3) the inconvenience to those involved in the litigation, (4) whether the requested delay was for legitimate reasons, dilatory, purposeful, or contrived,

(5) whether the movant contributed to the circumstances that gave rise to the continuance request, and (6) any other relevant factors depending on the unique facts of the case. *Unger*, at 67–68.

{¶ 33} The notice of the final hearing was served in October 2016. However, the motion to continue was not filed until January 4, 2017, one day prior to the scheduled hearing. Attached to the motion was a handwritten letter from Father to his counsel. In the letter and motion, Father sought a five or six month continuance indicating that a May or June 2017 release date was dependent upon whether he was approved for work release. However, there was no competent evidence introduced into the record to corroborate the release date. Indeed, the evidence in the record demonstrates that his release date is in 2019.

{¶ 34} We conclude, on this record, that the court did not abuse its discretion in denying the motion for the continuance. Simply put, there was no way to determine how long of a continuance would be needed. Further, Father was represented by counsel at the hearing, his opposition to the motion for permanent custody was known, and there was no showing that he had any additional information to offer at a hearing.

{¶ 35} The second assignment of error is overruled.


### IV. Ineffective Assistance of Counsel

{¶ 36} The third assignment of error is as follow:

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
WITH REGARD TO HIS MOTION FOR CONTINUANCE AND/OR ATTEND
HEARING PRIOR TO RELEASE.

{¶ 37} Father contends that his counsel did not render effective assistance. In support, he contends that counsel failed to timely file a motion for a continuance and failed to file a motion seeking to obtain Father's attendance or participation in the hearing.

{¶ 38} The right to counsel in termination proceedings includes the right to effective assistance of such counsel. *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist.1998). In order to obtain a reversal of a judgment based upon a claim of ineffective assistance of trial counsel, a movant must establish both that his trial counsel's conduct did not fall within the range of reasonable professional assistance, and that there is a reasonable probability that the outcome of the proceedings would have been different had counsel's performance not been deficient. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 39} Regardless of whether counsel's performance was deficient with regard to a continuance or arranging for Father's participation in the hearing, we can find no prejudice. While Father claimed he might be released in mid-2017, there are many unknown variables including the fact that the evidence demonstrated his earliest release date is in 2019. Further, it is unknown whether he will be required to remain in Indiana requiring A.J. to leave behind his medical providers and school. It is not known whether and when Father will be able to secure and maintain a job and housing, whether he will be able to develop a relationship with his child who has not lived with him for more than a decade, and whether he will be capable of meeting the child's special needs. Moreover, the court found numerous R.C. 2151.414(E) factors applicable, any one of which requires the court to find that the child cannot or should not be placed with Father.

{¶ 40} There was nothing in Father's letter to indicate that he had anything to add

to the hearing other than his opposition to the motion for permanent custody and his claim that A.J. needs to be with his family.   No other relatives were identified for placement, and Father did not state that he intended to take custody of A.J.   Instead, his letter merely indicated that an award of custody would deprive him of the right to visit with A.J.  In short, there is nothing in this record to suggest that Father's presence at the hearing would have changed the outcome.

{¶ 41} We conclude that, based upon this record, Father has failed to demonstrate any prejudice.   Accordingly, the third assignment of error is overruled.

### V. Conclusion

{¶ 42} All of Father's assignments of error being overruled, the judgment of the juvenile court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Patrick J. Conboy, II
Christopher Epley
Michael Brush
John Pinard
Hon. Anthony Capizzi